## WESTINGHOUSE ELECTRIC & MFG. CO. et al. v. PRECISE MFG. CORPORATION.

### SAME v. CHAS. A. BRANSTON, Inc.

(Circuit Court of Appeals, Second Circuit. March 8, 1926.)

### Nos. 234, 235.

**1. Patents ☞259—Manufacturer of nonpatentable element of patented combination, who by manufacturing and advertising makes it possible for others to assemble and use combination, is contributory infringer.**

Manufacturer of nonpatentable element of patented combination, who by manufacturing and advertising promotes infringement of patent, by making it possible for others to assemble and use combination, is contributory infringer.

**2. Patents ☞259—Sale of device capable of infringing use, with intent that it shall be so used, is infringement of patent.**

Sale of device capable of infringing use, with intent that it shall be so used, is infringement of patent, even though it is capable of a noninfringing use, and though there may be a form of instructions that it shall be used in a noninfringing way.

**3. Patents ☞328.**

Fessenden heterodyne patent, No. 1,050,441, No. 1,050,728, and Armstrong regenerative patent, No. 1,113,149, covering radio receivers, *held* contributorily infringed.

Appeals from the District Court of the United States for the Western District of New York.

Patent infringement suits by the Westinghouse Electric & Manufacturing Company and another against the Precise Manufacturing Corporation and against Charles A. Branston, Inc. Judgments for plaintiffs (10 F.[2d] 517), and defendants appeal. Affirmed.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, and John S. Powers, of Buffalo, N. Y., of counsel), for appellant Precise Mfg. Corporation.

Popp & Powers, of Buffalo, N. Y. (Samuel E. Darby, Jr., of New York City, and John S. Powers, of Buffalo, N. Y., of counsel), for appellant Chas. A. Branston, Inc.

Charles Neave and Stephen H. Philbin, both of New York City, for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. These cases will be disposed of in one opinion. Injunctions pendente lite were granted, after argument, supported by affidavits. The patents in suit are the Fessenden heterodyne, No. 1,050,441, No. 1,050,728, and Armstrong regenerative patent, No. 1,113,149. The Westinghouse Electric & Manufacturing Company is the owner of the patents, and the Radio Corporation of America is the licensee. All the patents have been held valid by this court, and no effort is put forth at this time to have them declared invalid for any reason. See International Signal Co. v. Vreeland Apparatus Co. (C. C. A.) 278 F. 468; Armstrong and Westinghouse Co. v. De Forest Radio Tel. & Tel. Co. (D. C.) 279 F. 445, affirmed (C. C. A.) 280 F. 584.

The appellant Precise Manufacturing Corporation manufactures and sells transformers and condensers. These instrumentalities may and are used in combination with other parts to make possible the patented circuits of Fessenden and Armstrong. As so used, they infringe all patents. The Precise supermultiformer is a unit comprising four transformers for use in a superheterodyne. They are tuned and matched together, then assembled in a metal box and sealed in wax. As such unit, they are designed and constructed for use in the intermediate frequency amplifying system of the superheterodyne. Matched transformers for operation at a fixed and predetermined frequency are to be found only in superheterodyne receivers. While transformers and condensers were known and used prior to the inventions, the patents here in suit and intermediate frequency amplifying systems were not known prior to these inventions, and therefore transformers constructed and designed for such use were unknown. Intermediate frequency transformers have no commercial utility, except in superheterodyne receivers. There is no show of construction of or use for them in other receiving sets. The efficiency of the system is due to the fact that the intermediate transformers are selected to operate at a predetermined frequency. This predetermined frequency is obtained by controlling the frequency of the oscillation.

Radio waves arriving from a broadcast station are intercepted by the antenna and radio frequency currents of the same frequency of alternation as that of the intercepted waves, and are set up in the antenna and transferred to the circuits of the first detector. The oscillator comprises a vacuum tube system which, by means of the regenerative invention of the Armstrong patent, may be so adjusted as to produce high-frequency alternating currents of any desired frequen-

cy. The frequency of the oscillations is so arranged that the difference between it and the frequency of the received oscillations will be a fixed or selected frequency, and it is this that gives rise to the term intermediate or beat frequency. The oscillator is so adjusted as to accommodate the intermediate frequency. The intermediate frequency amplifier system comprises three radio frequency amplifier tubes with other associate circuits. The system is designed so that it will amplify with the greatest efficiency alternating currents of a predetermined frequency. The second detector rectifies or detects the intermediate frequency currents, and separates from them the signal currents, which are termed audio currents. The audio frequency currents are then amplified in an audio frequency amplifier system, comprising one or more tubes. Such amplified audio currents then actuate a loud speaker or telephone receivers. The superheterodyne employs heterodyne amplification; that is, the weak currents produced by arriving waves are bound with stronger currents produced by the local oscillation. The resulting beat currents cause a stronger signal response than could be caused by the incoming wave currents alone.

The superheterodyne set has extremely high selectivity. In addition to the normal radio frequency tuning of the antenna circuit, by means of the variable condenser, the use of the heterodyne principle gives two supplementary means for excluding interfering signals. An undesired carrier wave of frequency differing greatly from the frequency of the oscillator will produce no effective beats. Beats can only be produced effectively by the interaction of vibrations having slightly differing frequencies. An undesired carrier wave of frequency differing slightly from the frequency of the desired wave will not produce signals, although beats may be formed. Beats produced between the currents from the undesired waves and those from the oscillator will not have the predetermined frequency. The intermediate amplifier system will pass only beat currents of a predetermined frequency value, and will exclude beat currents of different frequency values. Signals can only be produced by those beat currents where the intermediate amplifier system will pass to the second detector. The oscillator tube system, the intermediate frequency amplifying system, are characteristic of the superheterodyne receivers. In other receivers there is no oscillator tube system to generate radio frequency currents, or oscillations to beat with the currents

set up by the received broadcast wave. There is no intermediate frequency, which is that found between the frequency of the broadcast waves and the frequency of the audio currents in other receivers.

On the carton in which the Precise supermultiformer is placed when sold, there are instructions which constitute directions or advice that it may be used in superheterodyne receivers, and in the advertising matter it is stated to be designed for perfect long-wave and superheterodyne reception, and that "Fig. 2 shows the underside of the layout and gives a clear idea of the 'supermultiformer,' which really is the heart of the outfit, and is chiefly responsible for the sensitivity and stability of this set," and "the 'supermultiformer' is a multiple transformer for superheterodynes developed by the Precise Manufacturing Corporation of Rochester, and takes the place of the four separate intermediate frequency transformers that otherwise would be used." There is little doubt of the intention of the seller to manufacture and sell to the public, with the intent that it be used in connection with and as an intermediate frequency transformer in superheterodyne receivers.

The Precise Filtoformer comprises a condenser and a coil, employed in the circuits of the oscillator tube system. The condenser completes a circuit from the plate oscillator coil to the tube, and the coil permits direct current from the B battery to reach the plate of the oscillator tube, while preventing the high-frequency currents generated by the tube from passing through the B battery. The only radio receiver on the market employing an oscillator tube to generate local high-frequency currents which beat or heterodyne with the receiver oscillation to cause an intermediate or beat frequency, is the superheterodyne. This oscillator system is characteristic of the superheterodyne. The appellant Precise Manufacturing Corporation, in its booklet, states in detail how to construct superheterodyne receivers, using both the supermultiformer and the filtoformer. What is there described, and what could be constructed under the directions given, would be a superheterodyne receiver. They show how the device called the Precise Supermultiformer and the Precise Filtoformer are to be used.

It is argued that the Precise audio frequency transformers cannot be complained of. It is established that the audio frequency currents range from 50 cycles per second frequency to about 16,000 cycles, and radio frequencies employed in broadcasting recep-

tion range from 560,000 to 1,500,000 cycles per second. Transformers designed and intended for use with audio frequency currents are used in types of radio receivers other than superheterodyne. An intermediate frequency amplifying system does not amplify radio frequency currents of the frequency corresponding to the waves used in the audio broadcasting. It is limited to use within a range of frequency very much lower than those of the broadcast waves to which intermediate frequencies, the radio currents derived from the broadcasting waves, are converted in the superheterodyne receiver. The appellees do not claim that the sales of the audio frequency transformers constitute infringement of the patents in suit. The order appealed from restrains the "making, using, or selling, or offering for sale, any superheterodyne radio receiving set or any superheterodyne kit, or superheterodyne parts, particularly oscillating coils with intermediate radio frequency transformers, infringing or contributing to the infringement of the Fessenden heterodyne letters patent, or the Armstrong regenerative patent."

There is a difference between the Branston type and the Precise type of superheterodyne receivers, in the use of "reflexing" in the Branston. In the operation, the loop antenna intercepts the broadcast waves. Currents of this frequency are amplified in the system, and are then transferred to the tube system, where they are caused to heterodyne or beat with the currents there locally generated. The currents of beat or intermediate frequency are then transferred back or reflexed to the system of the tube where they are amplified. Currents for the wave frequency and currents of the intermediate frequency are both amplified in this system. Thence the currents of the intermediate frequency are further amplified in the system and are detected. The audio frequency amplifier system comprises the tubes of the Branston type, Branston's superheterodyne receiver is described in its booklet as a superheterodyne construction, and it accompanies it with a diagram calling it the "Branston reflex superheterodyne" in advertising in the daily newspapers; and it has placed its kit, constituting the parts, on sale in retail stores. The apparatus contained in these kits is useful only for the oscillator system and for the intermediate frequency system of the superheterodyne receiver. Its transformers are all specially designed and built for the superheterodyne. It is a complete set of parts for building the superheterodyne receiver. It contains an oscillator coupler,

three intermediate frequency radio transformers, a special transfer coupler, and a special antenna coupler. These, excepting the antenna coupler, are characteristic of the superheterodyne, and the latter is not complained of.

This appellant sells a regenerative loop, which is specially designed and constructed with three terminals, so that it can be used in regenerative assembly of the Armstrong regenerative circuit. It can be used with receivers other than superheterodyne, but when used, as shown by Branston in the superheterodyne diagrams, the loop is connected so that radio frequency energy is fed back or regenerated from the plate circuit to the grid circuit of the first tube. Loops of three terminals were unknown prior to the Armstrong combination. The purpose of the three terminals is to effect generation in the circuits in which the loop is connected. The regeneration invention of the Armstrong patent is accomplished by the plate circuit coil, by the loop being inductively coupled to the grid circuit coil of the loop. This loop is capable of and intended for use as a receiving system, utilizing the regenerative system of the Armstrong patent in suit, and it infringes.

The claim of infringement here in each suit is contributory in character. It is the selling of parts designed and intended for use in an intermediate frequency amplifier system and in the oscillator tube system of the superheterodyne receiver. These two systems are characteristic of the superheterodyne receiver. The affidavits show that these parts are the most difficult to manufacture, as well as the most important in superheterodyne receivers. The remaining parts used in each invention may be said to be standard, and can be used in various types of receivers on the market, which are not involved here. The Precise set of transformers are tuned and matched for predetermined intermediate frequency of the Precise superheterodyne circuit. The Branston intermediate frequency transformers are likewise tuned and matched for the different predetermined intermediate frequency of the Branston superheterodyne circuit. The only use known to the trade of these, or that suggested by each of the appellants in their advertising matter or instructions to the users, is in the superheterodyne receiver.

[1-3] Many valuable patents are combinations of unpatentable elements. By furnishing parts it makes it possible for others to assemble and use the combination, and when a manufacturer, by so manufacturing and ad-

vertising, points out the way in which this can be done, and thus, intentionally so acting, promote infringements of patentee's rights, he becomes a contributory infringer. Thomson-Houston El. Co. v. Ohio Brass Co., 80 F. 712, 26 C. C. A. 107. A device capable of an infringing use, and sold with the intent that it shall be so used, is an infringement of the patent, even though the same device is capable of a noninfringing use, and even though there may be a form of instructions that it shall be used in a noninfringing way. Sandusky Foundry & Machine Co. v. De Lavaud (C. C. A.) 274 F. 607. But where, as here, it appears that each of the appellants manufactured with knowledge of the contemplated infringement, contributory infringement is clear. Leeds & Catlin Co. v. Victor Talking Machine Co., 29 S. Ct. 503, 213 U. S. 325, 53 L. Ed. 816; Individual Drinking Cup Co. v. Errett (C. C. A.) 297 F. 733.

Judgments affirmed.