## GRAHAM PAPER CO. v. INTERNATIONAL PAPER CO.

## INTERNATIONAL PAPER CO. v. GRAHAM PAPER CO.

### Nos. 8958, 8959.

Circuit Court of Appeals, Eighth Circuit.

Feb. 17, 1931.

H. F. Lyman, of Boston, Mass. (Fish, Richardson & Neave, of Boston, Mass., and Morton Jourdan, of St. Louis, Mo., on the brief), for International Paper Co.

Howard G. Cook, of St. Louis, Mo., for Graham Paper Co.

Before KENYON and BOOTH, Circuit Judges, and REEVES, District Judge.

KENYON, Circuit Judge.

The International Paper Company (a corporation of the state of New York) filed a bill in equity against the Graham Paper Company (a Missouri corporation) charging contributory infringement of certain claims of two patents, both relating to methods of using mulch paper to enhance the growth of plants.

Patent No. 1,377,566 (hereinafter called first patent) is a process patent while Reissue Patent No. 15,231 (hereinafter called second patent) is both a process and a mechanical patent.

Claim 1 of the first patent reads as follows:

"The method of enhancing the growth of plants which comprises superimposing on the ground a flexible covering of opaque heat absorbing material adapted to distribute the absorbed heat to the soil, planting the plant producing stock through the covering, and maintaining the covering in place during the growth of plants."

Claim 4 is as follows:

"The method of enhancing the growth of plants which comprises superimposing a flexible covering on the ground, slitting the covering to form a flap, bending the flap with relation to the covering to produce an exposed planting area, and planting the plant producing stock in said planting area."

The second patent is for an improvement in drainage openings. They are in the form of slits. Claims 1 and 11 of this patent read as follows:

"1. The method of enhancing the growth of plants, which comprises superimposing a covering on the ground, exercising portions of the covering to expose soil areas for the plants, and forming openings in the covering at sections outside of the planting areas to receive drainage water from the covering and deliver the water to zones of the soil outside the planting areas."

"11. The method of enhancing the growth of plants which comprises superimposing on the ground adjacent the plants a flexible covering of opaque heat-absorbing material having drainage openings therein, whereby water is allowed to penetrate the soil through said openings and solar heat is absorbed by the covering and delivered to the subjacent soil."

Mr. Eckart worked out the theory of these patents while he was connected with a sugar company in Hawaii. He was trying to find some means of suppressing the growth of weeds which had come to be a troublesome problem on the plantation of the sugar company. He conceived the idea of using asphalt saturated paper for this purpose. One patent (not in issue here) which he secured before these patents were issued dealt entirely with this problem of suppressing weeds. He discovered, however, that the use of the mulch paper not only suppressed the weeds but increased the growth of the sugar cane. He tried the experiment on other crops, beginning with tobacco, and developed what is known as the "planting through" method, which is covered by the first patent here, the process being to lay mulch paper on the ground to be occupied by the plants, making holes in the paper, and through them setting out the plants, as counter distinguished from planting along the margin of the paper between adjacent strips thereof, which is called "margin planting." He found difficulties because of the lack of drainage perforations in the mulch paper, and that led to the application for the second patent. He also tried his experiments with the "planting through" method to pineapples, and was very successful. Only the first patent is used in pineapple culture.

The advantages of this "planting through" method, as shown by the record, are that the plant is entirely surrounded with mulch paper, which eradicates weeds in the immediate vicinity thereof, the anchoring of the paper to the ground is much easier than in the "margin planting" method, and the

expense of the paper is about one-half what it is when the paper is used in the "margin planting" method.

The paper mulch is a waterproof paper to prevent evaporation of the moisture from the soil. It is opaque and black, which gives to it heat-absorbing qualities, so as to transmit to the soil heat from the sun. It is made by saturating a tough paper with asphalt, which makes it waterproof. Mr. Eckart testified that at night it acts as an agent to prevent evaporation; that evaporation cools the soil, and that by his method the night temperature is elevated; that it conserves soil moisture, suppresses weed growth, and has a salutary effect on the micro-organisms of the soil, accelerating the bacteria which live in the soil, causing them to produce more nitrates, a principal food of plants.

The Hawaiian Pineapple Company in 1921 secured an option from Eckart for an exclusive license for the use of paper mulch in Hawaii in pineapple culture, for which license it subsequently paid $50,000. The sublicensees pay $12.50 per acre to the Hawaiian Pineapple Company for their license. The use of this paper mulch in accordance with the method of the patent has increased, according to the testimony, the production of pineapples in Hawaii 25 to 55 per cent., and has saved in labor an average of 60 per cent. The method is in general use among the pineapple growers in the Hawaiian Islands, where about 40,000 acres are devoted to the production of pineapples. The method has also been imported into the United States. The Department of Agriculture experimented with paper mulch and issued a bulletin in May, 1928, of the experiences and results of its efforts, showing that the use of mulch paper as to garden crops such as green corn, beets, carrots, tomatoes, etc., increased the production three or four times what it was on unmulched land. This bulletin spoke of the development of paper mulch on the sugar plantations in Hawaii, and gave full credit to Mr. Eckart for its initiation. This use of mulch paper in Hawaii achieved much publicity. Articles on the subject are in the record from the National Geographic Magazine, Popular Science Monthly, the Florida Grower, Farm and Ranch, Boston Evening Transcript, and a number of other publications showing the wide-spread interest which this development had aroused and its acceptance by the public as a new and novel idea.

In June, 1928, the International Paper Company purchased these two patents from Eckart, subject to certain licenses he had given, paying therefor the sum of $100,000, plus a royalty on all mulch paper sold.

Mr. Burke, sales manager of the mulch paper division of plaintiff, testified to the large sales made during the year 1929. Plaintiff spent over $550,000 in the paper mulch business during the first year thereof, which included the purchase price paid for the patents, and budgeted for the year 1930 an expenditure of over a million dollars. The raw paper used is manufactured by plaintiff in Louisiana—the asphalt saturation is done at plants at St. Louis and York, Pa.

It is claimed in this suit that defendant, Graham Paper Company, is guilty of contributory infringement. Plaintiff relies as showing contributory infringement on a circular of the defendant which contained directions for the use of its paper mulch in accordance with the methods of both patents in suit. Defendant seems to have copied plaintiff's practices and methods as to different weights of paper to be adapted for annual and perennial plants, also as to width of paper and length of strip included in the rolls.

The trial court found that patent No. 1,377,566, the "planting through" process patent, was valid, and that defendant was a contributory infringer thereof. As to reissue patent No. 15,231, it did not pass on its validity because of holding there was no infringement thereof. It found little difference between it and the other patent, except as to openings cut in the margins and body of the paper to permit entrance of rain and dew and in certain mechanical claims not contained in the other patent.

Both parties appeal from parts of this decision, and in the interest of clarity we shall designate the International Paper Company as plaintiff and the Graham Paper Company as defendant.

### Validity of Patents.

While the trial court did not pass on the validity of the second patent, it had no trouble in reaching a conclusion that the first patent was valid. To get the trial court's views, we have examined the original transcript, and find the court said at the close of the case:

"Frankly, gentlemen, the only point that troubles me about it is the extent of the decree. I think the evidence clearly warrants a holding that the patents are valid. There has been no attack made on them sufficient to justify any other holding. While I might have some doubt about them, personally, yet,

the evidence will warrant no other conclusion than that they are valid, pro hac vice, and I think, also, there is no question about it, that defendant has been guilty, in issuing this book with the instructions contained therein, of contributory infringement. They even go so far as to set out, on the third page, the very method of use which is patented."

Defendant assails both of the patents as invalid. It denies that Eckart was the first, original, and sole inventor of the method of enhancing the growth of plants as described and claimed in both patents, and avers that, "in view of the prior state of the art at the date of the alleged invention of the said Eckart, the alleged invention and improvement described in either or both of said Letters Patent No. 1,377,566 or Reissue Letters Patent No. 15231, and defined in the claim thereof, does not constitute patentable invention, and that said Letters Patent, and both of them, and the claims thereof, are therefore invalid.

"14. Defendant asserts that long prior to any date of alleged invention by said Eckart it was old to employ sheets of mulch paper in parallel strips in garden or other fields, separated from each other a short distance, leaving a longitudinal space for planting purposes, and that in view of this prior art such modifications as are illustrated, described and claimed in said Letters Patent No. 1,377,566 and Reissue Letters Patent No. 15231 were lacking in patentable novelty, and that said Letters Patent are therefore wholly void as not constituting patentable invention."

We were impressed in the arguments before us that the real controversy in the case was not as to the validity of the patents, but was the scope of the decree. Counsel for defendant spoke rather sympathetically as to the large amount that plaintiff had invested in these patents, and insisted that defendant wanted to be of assistance to it.

A number of prior patents issued to others than Eckart having some bearing on the general subject were introduced. Defendant does not plead anticipating patents as affecting validity, and hence these prior patents were not admissible to defeat the validity of plaintiff's claim for lack of novelty, but were admissible to show the state of the prior art and to assist the court in ascertaining the proper scope of the patents in construing the same. Jones v. Cyphers et al. (C. C. A.) 126 F. 753; Sodemann Heat & Power Co. v. Kauffman (C. C. A.) 275 F. 593; Zip Mfg. Co. v. Pusch (C. C. A.) 2 F.(2d) 828; Jorgenson v. Hawkins (C. C. A.) 14 F.(2d) 409; Brown et al. v. Piper, 91 U. S. 37, 23 L. Ed. 200; Grier v. Wilt, 120 U. S. 412, 7 S. Ct. 718, 30 L. Ed. 712. Certain earlier patents secured by Eckart were introduced in evidence. These were not pleaded, and were received by the court only for the purpose of "delimiting" the scope of the patents in suit.

The defense of nonpatentability of course is available, even if not pleaded. Jones v. Cyphers (C. C. A.) 126 F. 753; Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200; Slawson v. Grand St. P. P. & F. R. R. Co., 107 U. S. 649, 652, 2 S. Ct. 663, 27 L. Ed. 576; Hendy v. Miners' Iron Works, 127 U. S. 370, 8 S. Ct. 1275, 32 L. Ed. 207.

The defendant seeks in argument to attack the validity of the Eckart patents by virtue of these prior patents, using them for a purpose that could have been employed only if pleaded. We may say as to the prior Eckart patents, however, that they are experimental, leading up to the final solution of the problem by the two patents in suit. One of them relates only to the destruction of weeds, another to a provision in the paper of "pegging centres," that is, points in the paper through which pegs could be placed to hold the same in place; another is directed to the establishment of nitrate beds near sugar cane plants. Two others are exclusively directed to sugar cane culture. The last one, No. 1,396,269, does have relation to the "planting through" method, but was patented November 8, 1921, which was subsequent to the issuance of the first patent and a few days before the issuance of the second. We do not see that there is anything in these prior Eckart patents, even were they admissible in an attack on the validity of the patents, to defeat novelty or patentability of either one. If they impose any limitations upon the scope of the claims, it is rather unimportant, for the practices set forth in defendant's circular are clearly within the claims of the patents, regardless of any narrow interpretation that might be placed upon them by virtue of these patents.

Evidence of the prior art to destroy the validity of a patent must be reasonably clear. Schumacher et al. v. Buttonlath Mfg. Co. (C. C. A.) 292 F. 522; The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; Eibel Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

If the question of invention is in doubt, it is quite generally held by the courts that general acceptance by the public of the device and the commercial success thereof is

evidence to support the presumption of invention by virtue of the issuance of the patent. National Hollow B. B. Co. v. Interchangeable B. B. Co. (C. C. A.) 106 F. 693; Tropic-Aire, Inc., v. Sears, Roebuck & Co. (C. C. A.) 44 F.(2d) 580; Acme Foundry & Machine Co. v. Oil Well Improvements Co. (C. C. A.) 2 F.(2d) 530; Eibel Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523; Temco Electric Motor Co. v. Apco Mfg. Co., 275 U. S. 319, 48 S. Ct. 170, 72 L. Ed. 298.

That there is a presumption of validity, utility, and invention from the fact that a patent has been issued by the Patent Office is well settled. Tropic-Aire, Inc., v. Sears, Roebuck & Co. (C. C. A.) 44 F.(2d) 580. How strong this presumption of validity may be is debatable, in view of the multiplicity of patents being issued. It is referred to by the trial court in its opinion as follows: "The case is made troublesome because of the many patents in evidence, which together constitute a glaring example of issuing patents for the merest shade or shadow of inventive advancement. The situation casts doubt upon the wisdom and logical truth of ascribing presumptive validity in even a close case, from the fact of the grant. This statement does not refer to Patent No. 1,377,566, so particularly, because I am constrained to the view, if I follow the evidence offered, as I must, that the above patent is valid." We have considerable sympathy with the trial court's expression on this subject. If patents are to be issued for every trifling device, the presumption of validity will be greatly weakened. The Supreme Court has referred to this in Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438; also in Dunbar v. Meyers, 94 U. S. 187, 24 L. Ed. 34. The Supreme Court in Eibel Co. v. Paper Co., 261 U. S. 45, 63, 43 S. Ct. 322, 328, 67 L. Ed. 523, said: "In administering the patent law, the court first looks into the art, to find what the real merit of the alleged discovery or invention is, and whether it has advanced the art substantially. If it has done so, then the court is liberal in its construction of the patent, to secure to the inventor the reward he deserves."

We are satisfied there was real merit in patent No. 1,377,566, and that it involved actual invention, and substantially advanced the art. Mulch or mulching is a common and well-understood term, long in use. The term "mulch paper" was not in such use prior to Eckart's invention. He is entitled to the credit for the original method of using mulch paper to assist in plant growth. Were there any doubt as to the validity of this patent, the presumptions from commercial success, from the fact of its issuance, and the rule that one attacking the validity of a patent must do so with reasonable clearness, would be sufficient to save it.

The second patent does not seem to be very important, yet it is an improvement in the method of the first patent, and, while it would seem that a mere matter of putting holes through paper involved no particular invention, yet, by reason of its close connection with the first patent, and that it may possibly be considered some advance in the art, we are inclined to the belief that, if the first patent is to be sustained, this should be also.

### Infringement.

The court held that defendant as to the first patent was guilty of contributory infringement, but had not infringed the second patent. Defendant contends it had not infringed either one of the patents. It is without question that defendant had sold an asphalt-treated mulch paper exactly like the paper manufactured by plaintiff. Samples are in evidence, and there is apparently no difference. The strong evidence against the defendant is the circular which it issued in which it pointed out directions as to how its mulch paper should be used. We set out the following from that circular:

"Labor saving devices are in fashion, but not until recently has great progress been made in taking the back bending out of gardening. Now, however, it seems that we are well on the way to a garden without work, or at least without the uninteresting and seemingly unending work of cultivating the weeding. This can be accomplished by using Graco Mulch Paper.

"The Paper Mulch Method, which was originated in Hawaii, has been used by amateurs and experiment station workers during the recent season with so much success, that it seems to be established as an effective way of keeping down weeds in the home garden. It is not only less work than cultivating, but produces earlier and larger crops.

\*     \*     \*     \*     \*     \*

"Where plants are to be set out, the entire garden surface may be covered with paper, and holes made for the plant to be set into. In this case holes are cut in the paper to allow rain to enter.

\*     \*     \*     \*     \*     \*

"Planting is done by either of two methods—through the paper or between strips of

paper. Where you have such crops as tomatoes, eggplant, peppers, pineapples, or field corn, which require rather wide intervals, the best way is to plant in regularly spaced openings made through the paper. With pineapples, the usual practice is to stab a hole through the paper with a rounded stick or dibble. The pineapple slip is then placed in the plant bed through the opening.

" 'With tomatoes and other less hardy plants, it is advisable that the openings be made sufficiently large for some uncovered soil around the plant's base. Usually a hole about four or five inches in diameter is sufficient.

" 'Sometimes crosscross slits are made in such a manner that the edges may be folded back as flaps.' It is possible to so adjust these flaps that considerable protection from the wind is given.' "

It is interesting to note that defendant in its circular admits the paper mulch method originated in Hawaii. It is apparent that defendant explained in this circular how to use the paper in the "planting through" method exactly as covered by the first patent, and that it also explains the method of cutting holes through the paper to allow rain to enter, which is the subject-matter of the second patent. We are satisfied that the learned trial court did not have called to his attention, or must have overlooked, this portion of the circular, for, if this circular is sufficient to show defendant as a contributory infringer of the first patent, it likewise showed it to be such infringer of the second. The necessary elements of a contributory infringer were there. It was making sales of mulch paper adapted for use in accordance with the methods covered by both patents, and was expressly recommending and explaining to purchasers how to make use of the paper in accordance with those methods.

Defendant contends there could be no contributory infringement apart from a direct infringement. A completed act of infringement is not necessary to afford ground of relief. Threatened infringement is sufficient. Smeeth et al. v. Fox Copper & Bronze Co. et al. (C. C. A.) 130 F. 455; Tindel-Morris Co. v. Chester Forging & Engineering Co. (C. C.) 163 F. 304; Chester Forging & E. Co. v. Tindel-Morris Co. (C. C. A.) 165 F. 899.

In Cincinnati Galvanizing Co. v. Marquette Tool & Mfg. Co., 26 F.(2d) 593, 594 (Seventh Circuit), the Appellate Court says that: "Ordinarily there can be no contributory infringement without actual infringe-

ment"—citing Popular Mechanics Co. v. Brown (C. C. A.) 245 F. 859, and Computing Scale Co. v. Toledo Scale Co. (C. C. A.) 279 F. 648. The court does not enlarge on what it means by this phrase. Certainly it does not mean that a threatened infringement cannot be prevented by injunction. Here, however, defendant contributed to what, if its instructions were followed, would be an actual infringement. That court has laid down the rule in Solva Waterproof Glue Co. v. Perkins Glue Co., 251 F. 64, 73, as follows: "The rule of law in such case is that one who makes and sells one element of a patented combination with the intention and for the purpose of bringing about its use in such a combination is guilty of contributory infringement, and is equally liable with him who organizes the complete combination."

Defendant's counsel in its brief states the law as to contributory infringement as follows: "Where a person furnishes an article (in the present case, asphalted paper) which is particularly adapted to be used in performing a patented process, and which the person furnishing the same intends shall be thus used, that person is liable as a contributory infringer for any infringement which afterward occurs in accordance with his intention. But, where the property thus furnished is useful for some other purpose than to be used in performing a patented process, and where he who furnished the property does not intend or know when furnishing the same that it is to be thus used, he incurs no liability to an action for infringement." Plaintiff's counsel agrees to this as a correct statement of the law, except the words, "for any infringement which afterward occurs." There is little difference in the position of counsel as to the law of the subject.

Walker on Patents, § 407, describes contributory infringement as "intentional aid or co-operation in transactions, which collectively constitute complete infringement."

In Westinghouse Electric & Mfg. Co. v. Precise Mfg. Corp., 11 F.(2d) 209, the Circuit Court of Appeals of the Second Circuit holds that the sale of a device capable of an infringing use with intent that it shall be so used is an infringement of a patent, even though it is capable of a noninfringing use, and even though there may be a form of instructions that it shall be used in a noninfringing way. See, also, Thomson-Houston Electric Co. v. Ohio Brass Co. (C. C. A.) 80 F. 712; Parsons Non-Skid Co. v. Atlas Chain Co. (C. C. A.) 198 F. 399; Individual Drinking Cup Co. v. Errett (C. C. A.) 297

F. 733; Electro Bleaching Gas Co. et al. v. Paradon Engineering Co., Inc. (C. C. A.) 12 F.(2d) 511; Bassick Mfg. Co. v. Larkin Automotive Parts Co. (D. C.) 19 F.(2d) 939; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816.

The trial court summed up the whole question in its opinion as to the first patent when it said: "Defendant issued and sent to its salesmen, and to some of its customers, or potential customers, a circular describing the method of using its mulch paper. This method so described followed the method of plaintiff's Patent No. 1,377,566, in that it described and recommended the use by purchasers of defendant's mulch paper of the identical method protected by plaintiff's above-numbered patents. There is no doubt touching defendant's guilt of the contributory infringement charged, so far, at least, as concerns Patent No. 1,377,566." In stating as to the second patent that "defendant, however, made no reference to such openings for rain or dew, in its circular," the court was in error, as we have before pointed out, because such direct reference was made, and the language of the court as to infringement of the first patent seems to us equally applicable to the question under the second patent. Mr. Burke testified there was no difference between plaintiff's paper and defendant's paper; that both were black and consisted of Kraft paper saturated with asphalt. There is no doubt that the kind of mulch paper sold by defendant could be used without violating these patents. Defendant would not be guilty of contributory infringement in selling this paper to be used in any method outside of those covered by the patents, and therein lies the real difficulty in this case, viz. What should be the scope of the decree to deal justly with both parties? Plaintiff was entitled to what was legitimately covered by its patent. Defendant was entitled to sell its paper in any way it chose, and to whom it pleased, provided it did not trespass on plaintiff's rights. Defendant owes good faith with regard to the sale of its paper so as to avoid infringement of plaintiff's patents. On the other hand, it is not fair to give to plaintiff a monopoly and practically exclude defendant from the market for its mulch paper. Sheridan-Clayton Paper Co. v. United States Envelope Co. (C. C. A.) 232 F. 153, 155. Defendant, according to the record, called in its circulars when plaintiff objected thereto, and evidently few of them remain in existence. That, of course, does not excuse its infringement. Plaintiff's suggestion as to the injunction was that it should cover "selling or offering for sale any paper adapted for use as a mulch in accordance with the methods covered by the patents in suit, without taking all reasonable precautions and steps to prevent use thereof in accordance with such methods"; defendant claiming that it cannot be enjoined from selling paper mulch, and that the patents, not covering paper mulch, but being merely methods for enhancing the growth of plants by a particular manner of planting, cannot give to plaintiff a monopoly of the business of manufacturing and selling mulch paper that can be used, not only for the purposes of the patent, but outside thereof. Defendant contends that "the most that a court of equity would be justified in decreeing * * * would be that the defendant should not advertise or hold out that the mulch paper sold by it is adapted for use in accordance with patent 1,377,566."

The trial court adopted neither suggestion as to a decree. It enjoined defendant and its agents and servants "from infringing said Patent No. 1,377,566, or any of the claims thereof, * * * during the term of said Patent, from selling or offering for sale any paper designated as mulch paper, or mulching paper (or word, or words of similar import) or from advertising or holding out as such paper, any paper which is adapted for use in accordance with the method covered by said Patent."

We think the decree of the trial court was about as fair an arrangement as could be worked out. On the appeal of plaintiff, International Paper Company, the decree is reversed and remanded, with directions to enter a decree holding the reissue patent No. 15,231 infringed and valid. On the appeal of defendant, Graham Paper Company, the decree of the District Court is affirmed.

It is apparent that any damages here suffered by the plaintiff are trivial. Only two hundred rolls of the paper were sold, and, as this case is to go back for a corrected decree as to infringement under the second patent, we venture to suggest to the trial court that, if plaintiff insists on an order of accounting and the appointment of a master to make such accounting, that if said accounting be made and does not show any substantial profits, the costs thereof be taxed to the plaintiff. Bradford v. Belknap Motor Co. (C. C.) 105 F. 63; Keystone Type Foundry v. Portland Pub. Co. (C. C.) 180 F. 301.

Affirmed on appeal of defendant, Graham Paper Company.

Reversed and remanded on appeal of plaintiff International Paper Company.