BASSICK MFG. CO. v. ADAMS GREASE GUN CORPORATION (two cases).

Nos. 142, 143.

Circuit Court of Appeals, Second Circuit.

July 14, 1931.

Lynn A. Williams, of Chicago, Ill. (Stephen H. Philbin and Fish, Richardson & Neave, all of New York City, and Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., of counsel), for plaintiff.

Alfred W. Kiddle, Wylie C. Margeson, and Henry T. Hornidge, all of New York City, for defendant.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The three patents in suit relate to lubricating apparatus which has come into very extensive use in the greasing of machine bearings, particularly those of automobiles. Speaking broadly, the apparatus consists of a compressor or "grease gun" adapted to force grease through a flexible hose attached thereto, a coupling device at the end of such hose, and a grease cup or fitting, adapted to be permanently located in proximity to a bearing, to which the coupler may be attached when the bearing is to be lubricated. The claims of the patents in suit are for combinations of the elements which make up the complete lubricating apparatus.

The plaintiff manufactures and sells what has become known as the Alemite and the Alemite-Zerk lubricating equipment, but in selling its product it does not assemble the apparatus as a unit, but it catalogues, prices, and sells grease guns, couplers, and fittings separately, with the intention that the purchasers shall combine them into the patented combinations. Similarly the defendant; so that the infringement charged consists, not in the manufacture or sale of the assembled apparatus, but in the sale of separate elements of the combination with the intention that the ultimate purchaser shall so combine them with other parts, some of which may be of the plaintiff's own manufacture, as to practice the combinations protected by plaintiff's patents. By the sale of certain of its products, the defendant was found to infringe various claims; but the sale of others was held not to constitute contributory infringement. Specifically, it was decreed that claims 12 and 13 of the Winkley reissue patent and claims 1, 2, 3, 4, 6, 8, 14, and 15 of the Gullborg patent were contributorily infringed by the sale of pin fittings of the Alemite type; that the same claims were infringed by the sale of grease guns equipped with couplers of the Alemite type; that claims 1, 2, 3, 4, and 8 of the Gullborg patent and claims 2, 3, and 5 of the Zerk patent were contributorily infringed by the sale of defendant's new fittings (Exhibits 73 and 74) with knowledge and intent that they were to be used as part of the combinations described in said claims; that claims 12 and 13 of the Winkley patent were contributorily infringed by the sale of grease guns equipped with defendant's "snap-on" couplers; and that claims 14 and 15 of the Gullborg patent were not infringed by the sale of grease guns equipped with "snap-on" couplers.

The plaintiff's appeal involves only claims 14 and 15 of the Gullborg patent, No. 1,307,734, and is from so much of the decree as held these claims not to be infringed by the manufacture and sale of defendant's grease gun and "snap-on" coupler for use in conjunction with Alemite fittings of plaintiff's manufacture. Claims 14 and 15 were taken by amendment from the application which eventuated in patent No. 1,307,733 to Gullborg, and were made part of the application which eventuated in the Gullborg patent in suit. The latter discloses a "suction effect" coupler which was not diclosed in patent No. 1,307,733. The two claims differ only in a respect immaterial in the present litigation, and it will suffice to quote one of them. Claim 15 reads as follows: "The combination with a grease cup comprising a tubular member having a closure seat, a closure, a pin extending through said tubular member and from both sides thereof, and a spring confined between said pin and closure, and tending to hold said closure on its seat, of a grease pump having a discharge conduit, and means co-acting with the ends of said pin for detachably connecting the discharge end of said conduit with said grease cup."

It will be observed that this claim describes the grease cup (pin fitting) in detail

and the gun and coupler generally. Read literally the claim is broad enough to cover the combination of the specific pin fitting with a gun and coupler without regard to whether the coupler is of the suction type. Moreover, a literal interpretation of the claim is consistent with the scope of the other claims of the patent. The earlier claims describe the fitting generally and particularize the coupler, limiting the combination to an apparatus having a coupler of the suction type such as is described in the specifications; claims 14 and 15, however, reverse this, generalizing the coupler and particularizing the pin fitting. It seems plain that they were meant to cover combinations of the specific pin fitting with a gun and bayonet-slotted coupler of generalized description; and, so construed, they would include couplers of the nonsuction type such as defendant's "snap-on" coupler.

The District Judge thought that the claims must be limited in scope to save their validity, and that, if read broadly enough to include a nonsuction effect coupler and gun, they would be invalid because the claimed combination would not produce any new or different result than was accomplished by prior art lubricating systems. With this conclusion we cannot agree. None of the prior art disclosed a pin extending through the fitting. Such a pin gives added strength and permits grease to be delivered under heavier pressures. It is true the record has no evidence of this, but we may judicially notice so obvious a principle of mechanics. Plainly there will be high pressures set up to draw apart the coupler and fitting when grease is being forced into a "frozen" bearing. The shearing strain of these is apparent even to a mind untutored in mechanics, and a single pin extending through the fitting is another way of meeting that strain than any theretofore disclosed. Thus the combination produces a new result.

The invention in a combination is in the idea of combining the elements. They may all be old, but the combination may be patentable. A fortiori this may be true when one element is also new, as was the pin fitting of the claims under discussion. The element may be patented alone, and the combination also, if new and an invention. But the introduction of the new element into the combination may be obvious; though by hypothesis the combination must be new, because there is a new element, the substitution of this for its precedessors may be obvious once it appears. Otherwise one could get an in-

definite monopoly upon all possible combinations with anything which is itself an invention, e. g., upon the lid and the new patent lock which secures it, upon the fixture and the new patent gas which feeds it. Plainly you could not get a patent for such a combination, because, given the lock or the gas, it takes no invention to combine it with these things. On the other hand, one may devise a new part to a machine; e. g., a new feeder or ejector. This is of no service except as a part, and its fabrication was as a part and not as a separate article. In that case one gets a patent on the whole machine, even though the use of the part is inevitable once it is devised. It has no functional importance except as part; a new combination was necessarily invented, because it had no other function. This was such a case. The pin fitting had no other function except as part of the combination. It is true that it could be used with a nozzle gun, but that would be a misuse, because such a grease cup needs no pin. The user would be using it, as though a man used a part out of a machine as a paperweight. It will serve but only by ignoring what it was made for. It was made for a grease gun and bayonet-slotted coupler; it was a part of that combination, and with them created a new combination, which was patentable because it was valueless outside that combination. So we think the claims valid though construed broadly enough to cover the nonsuction type of coupler. Judge Campbell so held in Bassick Mfg. Co. v. United Grease Gun Corp., 40 F.(2d) 549 (D. C. S. D. N. Y.). The plaintiff has argued that the same was held by the Sixth Circuit in Lyman Mfg. Co. v. Bassick Mfg. Co., 18 F.(2d) 29; but we do not read that decision as having discussed claims 14 and 15 in the scope here necessary, although one of the petitions for rehearing appears to have raised the point.

It is urged by the defendant that, even if claims 14 and 15 be construed broadly, there was no contributory infringement because defendant did not sell the "gist" of the invention. Such a distinction was said to be without legal significance in Carbice Corp. v. Am. Patents Corp., 283 U. S. 27, 51 S. Ct. 334, 335, 75 L. Ed. 819. Commentators in some of the legal periodicals have suggested that the case last cited foreshadows a limitation upon the doctrine of contributory infringement. 31 Col. L. Rev. 743, 775; 40 Yale L. J. 1330. See, also, R. M. Hollingshead Co. v. Bassick Mfg. Co. (C. C. A. 6) 50 F.(2d) 592 decided June 9, 1931. But we do not read the opinion of

Mr. Justice Brandeis as intending a modification of that doctrine. He appears to have treated the case as governed by the principle that a patent monopoly "may not be 'expanded by limitations as to materials and supplies necessary to the operation of it.'" (Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U. S. 502, 515, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959); and he expressly differentiated it from "an ordinary case of contributory infringement" exemplified by Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 325, 333, 29 S. Ct. 503, 53 L. Ed. 816. That case applied the rule that the sale of an unpatented element of a patented combination with the intent that it shall be united with the other elements to complete the combination is infringement. Defendant's manufacture and sale of the snap-on couplers for the purpose of being used to make the combination of claims 14 and 15 fall exactly within that rule as we understand it. See Lyman Mfg. Co. v. Bassick Mfg. Co., 18 F.(2d) 29 (C. C. A. 6); Westinghouse Elec. & Mfg. Co. v. Precise Mfg. Co., 11 F.(2d) 209 (C. C. A. 2).

We pass now to the numerous questions raised by the defendant's appeal.

1. It is contended that claims 12 and 13 of the Winkley reissue patent were not contributorily infringed by the sale of defendant's grease gun equipped with its "snap-on" coupler. Only one of the two claims, which for present purposes are identical, need be quoted: "12. The combination with a lubricant receptacle of means for supplying lubricant thereto, under pressure, comprising a conduit having means for detachably securing it to said receptacle, a perforated member yieldably mounted in said first-named means for contacting with one end of said receptacle to seal the connection between said conduit and said receptacle, and spring means for yieldingly holding said yieldably-mounted means in contact with said receptacle."

The dispute revolves about the clause, "spring means for yieldingly holding said yieldingly-mounted means in contact with said receptacle." It is plain from the specifications that this clause refers to the spring 46, which holds the slidable cup of the Winkley coupler in contact with the fitting; and it is equally clear that the pressure of the lubricant does not in the least increase the seal between the two. In the "snap-on" fastener of defendant the sealing between coupler and fitting is not effected by a spring but depends altogether upon the pressure of the grease. The slidable "floater" in defendant's coupler at first presents a solid barrier to the grease because its aperture is then closed by the ball valve upheld by its spring. This continues until the pressure is sufficient to open the valve by pressing down the ball upon its spring. The spring acts no differently after the valve opens than before; it always does no more than carry down the strain of the grease pro tanto to the abutments of the spring which are themselves mounted upon the floater. Hence it cannot be said that the spring holds the floater, "yieldably mounted means," against the fitting. The pressure of the grease alone does that, although the spring is of course necessary to resist part of that pressure and carry it to the sealing surface of the floater. But this is not an equivalent of the Winkley spring which operates independently of the grease pressure. The court below erred in finding infringement of claims 12 and 13 by the sale of defendant's snap-on coupler.

Under this point of noninfringement the defendant has also argued that the claims are invalid because anticipated by patent No. 879,880 to Landau. The claims were sustained against a similar attack in Lyman Mfg. Co. v. Bassick Mfg. Co. (C. C. A.) 18 F. (2d) 29, and for reasons with which we concur. It is true that the patent to Landau was not discussed by Judge Denison, though it was in the record; but the Barcus patent, which he did discuss, is a better reference for the defendant than is Landau.

2. It is contended that plaintiff cannot maintain its suit upon any of the claims of the Gullborg patent in suit because of delay in filing a disclaimer as to claim 12. This claim was held invalid in the litigation reported as Lyman Mfg. Co. v. Bassick Mfg. Co., 18 F.(2d) 29 (C. C. A. 6). That litigation included six suits, all of which were disposed of in a single opinion on March 23, 1927. Petitions for rehearing were filed in two of the suits, neither of which, however, involved claim 12. These petitions for rehearing having been denied May 13th, the plaintiff contends that the time for presenting a petition for certiorari did not expire until August 13th, and that its disclaimer filed on August 29th was well within the period which this court sanctioned as a reasonable time within which to disclaim, in R. Hoe & Co. v. Goss Printing Press Co. (C. C. A.) 31 F.(2d) 565, and Ensten v. Simon, Ascher & Co. (C. C. A.) 38 F.(2d) 71, affirmed, 282 U. S. 445, 51 S. Ct. 207, 75 L.

Ed. 453. The defendant, on the other hand, contends that in each of the suits involving claim 12 the mandate was filed April 23d, so that the time to apply for a writ of certiorari expired July 23d and the time to disclaim thirty days thereafter. The question is of seasonable action. Ordinarily, thirty days after the time expires to petition for certiorari would seem to give the patentee reasonable opportunity to determine his course of action, as we said in the Hoe and Ensten Cases. In the case at bar, however, the decision that claim 12 was invalid was announced in an opinion which was subject to review as to other claims until August 13th. We do not think the companion suits can be ignored merely because they did not involve claim 12. Had the writ of certiorari been allowed, the Supreme Court's decision as to the other claims might have resulted in such a construction of them as would have cast doubt upon the correctness of the lower court's disposition of claim 12. It was not an unreasonable delay for the patent owner to await this possibility before determining to file the disclaimer.

■■■ 3. It is contended that defendant's sale to Wright of pin fittings of the Alemite type did not contributorily infringe the claims in suit of either the Gullborg or the Winkley patent. This is based, first, on the argument that they may have been genuine fittings of plaintiff's manufacture which defendant had procured from purchasers from plaintiff. But defendant offered no proof that such was the fact. It has the burden of proving an implied license, and we regard the plaintiff's proof as sufficient for a prima facie case. See Lyman Mfg. Co. v. Bassick Mfg. Co., supra; Bassick Mfg. Co. v. Auto Equipment Co., 13 F.(2d) 463 (C. C. A. 7). Then it is argued that, even if the fittings were spurious, there was no proof of an intent that they should be used in an infringing combination. But intent may be inferred. At the time they were sold, they had no utility except as used in a combination which would infringe the claims in suit.

■■■ 4. The defendant makes a similar contention with respect to its sales of the Adams grease gun equipped with a suction effect coupler. Besides relying upon the proposition that the burden was upon plaintiff to show affirmatively that the element sold was not of plaintiff's manufacture—a proposition we have already rejected in discussing the previous point—defendant contends that the evidence does show that the couplers sold by it were genuine. It relies upon the testimony of its president, Mr. Adams, a witness called by plaintiff. He testified that "the coupler that we have always sold with the original guns that we sold were the genuine Alemite couplers"; but he went on to explain that only 5 or 10 per cent. of the whole number sold by defendant were obtained from Bassick Alemite Service Corporation, while the rest were gotten from jobbers, and he assumed the couplers purchased through jobbers were genuine, although some of them, like the one sold to Wright, bore no patent markings. No genuine Alemite coupler was shown to have been made without patent markings. We do not consider Mr. Adams' testimony sufficient to overthrow the plaintiff's prima facie case.

■ 5. The defendant's next point is a denial that the sale of its new fittings (Exhibits 73 and 74) was a contributory infringement of the Gullborg or the Zerk patent. It is argued that the record is barren of evidence that the new fittings were sold with knowledge and intent that they were to be used with plaintiff's products to form the combination protected by the patent claims. But defendant's advertising circular states that its new fitting "fits any grease gun in general use," and the only greasing equipment in general use was that of the plaintiff. It is true that the new fittings might be used either with the Gullborg coupler or the Zerk nozzle, and plaintiff is faced with the embarrassment that it cannot say with which type defendant intended them to be used. But, as plaintiff owns and sues upon both patents, it would surely be an absurd result to deny an injunction because plaintiff cannot prove specifically which patent the fittings were meant to infringe, if it can show, as it did, that they were meant to infringe one or the other. The granting of an accounting was also right, though upon the accounting plaintiff may have difficulty in proving its damages if it cannot show which patent was infringed. Profits, however, would seem to be recoverable, even though the infringement is not specifically allocated to either patent. But questions of the accounting are not before us and are not to be deemed decided by the above observations.

6. It is urged that plaintiff is not entitled to an accounting in the absence of actual or constructive notice to defendant because of an alleged failure to comply with the statute as to patent markings in respect to plaintiff's pin fittings, couplers, and nozzles. No authority has been called to our attention which

41

requires each element of a patented combination to bear the patent marking; but questions of marking and of notice may properly be left for the accounting. Aronson v. Toy Devices, Inc., 1 F.(2d) 91 (C. C. A. 3).

[10] 7. Since the present suit was started before plaintiff filed its disclaimer, it is urged that no costs in respect to the Gullborg patent can be recovered by plaintiff. Rev. St. § 4922, 35 USCA § 71; Liquid Carbonic Co. v. Gilchrist Co., 253 F. 58 (C. C. A. 7); Bassick Mfg. Co. v. Adams Grease Gun Corp., 26 F.(2d) 722, 723 (D. C. S. D. N. Y.); Sachs v. Hartford Elec. Supply Co., 47 F. (2d) 743, 748 (C. C. A. 2). Plaintiff has succeeded upon both the Gullborg and the Zerk patent; it is entitled to costs and disbursements in respect to the latter but not the former. There is but one bill of costs in that suit, and it should be awarded to plaintiff; but disbursements so far as attributable to the Gullborg patent should not be awarded to plaintiff. Allocation of the disbursements between the patents is for the District Court to determine.

The statute has no application to the costs in this court. Sachs v. Hartford Elec. Supply Co., supra. The costs of this appeal will be divided, as each party has succeeded in part. The decrees must be modified to hold that claims 14 and 15 of the Gullborg patent were contributorily infringed by the sale of grease guns equipped with defendant's snap-on couplers, and that claims 12 and 13 of the Winkley patent were not so infringed. Disbursements in respect to the Gullborg patent are not to be recovered by plaintiff. In other respects the decrees are affirmed.