## GAUVIN v. SMITH.
### No. 2718.

District Court, D. Connecticut.
Jan. 23, 1939.

Paul Kolisch, of New York City, and George H. Cohen, of Hartford, Mass., for plaintiff.

Emery, Varney, Whittemore & Dix by Nichol M. Sandoe, all of New York City, for defendant.

THOMAS, District Judge.

This is a suit brought by the plaintiff to restrain infringement of Patent No. 1,783,839, granted to the plaintiff on December 2, 1930, for a roof covering. The application for this patent was filed on December 27, 1929. Plaintiff's rights in the patent and the jurisdictional pre-requisites are admitted.

In addition, plaintiff charges the defendant with unfair competition by reason of his advertising and selling the alleged infringing roof covering under the name of "Old English Thatch", a trade name or trade mark which is alleged to have been first adopted by the plaintiff and under which it is alleged the product manufactured by the plaintiff and his licensees has become known to the purchasing public in Canada and in the United States.

I shall first deal with the charge of infringement. Plaintiff relies on claims 1 to 4, inclusive, and they read:—

"1. As a new article of manufacture, a roof covering comprising an envelope, brush material held within the envelope and projecting outwardly therefrom, and a cementitious material within the envelope about the brush material.

"2. As a new article of manufacture, a roof covering comprising an envelope with impregnated paper, brush material therein, and a bituminous material within the envelope surrounding the brush material.

"3. As a new article of manufacture, a roof covering comprising an envelope coated on the inside with a water proof cementitious material and a brush material held within the envelope, projecting therefrom.

"4. As a new article of manufacture, a roof covering comprising asbestos paper impregnated with asphalt, brush material held within the envelope projecting therefrom and asphalting material within the envelope about the brush material."

### The Patent in Suit.

The invention defined by the claims in issue relates to a roof covering, and one of the objects of the invention is to provide a product of this type which will simulate a thatched roof and yet avoid the disadvantage of the old-fashioned roof. The patent states that further objects are to provide a roof covering which may be manufactured ready to lay at a relatively low cost, which may be laid in a simple manner and which will form a water and weatherproof covering possessing high heat-insulating quality.

The art of thatching roofs has been practiced from time immemorial, but in most cases the methods of applying thatch material were tedious and expensive, as they involve laying the loose thatch material on the roof and securing it in place in such manner as to provide adequate protection against the elements.

According to the specification of the patent, page 1, lines 16 to 22, inclusive, the improved roof covering "consists essentially of an envelope of impregnated paper or other fibrous material containing a quantity of a projecting brush material held in the envelope with suitable cementitious material as hereinafter more fully set forth and described in the accompanying specification and drawings."

Having reference to the specification and the drawings of the patent, it appears that plaintiff's invention relates to what may be called a pre-formed thatch roofing, the elements of which may be assembled at the plant in either individual shingle form or roll form, so that the roofing can be readily shipped to its place of use to be laid quickly and cheaply by unskilled labor. If individual shingles are preferred, they are laid in overlapping position on the roof in the manner of applying ordinary shin-

gles, but, if a roll is preferred, it may be cut to length as desired and laid on the roof in overlapping layers.

According to the disclosure of the patent, the envelope above-referred to comprises a sheet or strip of light, fibrous weather-resisting material, such as paper or fibre board impregnated with water-proofing material. This sheet is folded over the butt ends of the brush material, so as to enclose the same with the free ends of the brush material projecting outwardly from the open-end of the envelope. The brush material is held within the envelope with suitable cementitious material of a water-proof character, such as bitumen or asphaltum of suitable consistence. The process of assembling is described on page 1, lines 89–95 of the specification in the following language: "the bituminous material within the envelope is preferably applied hot, and the envelope is pressed firmly against the brush material in the process of manufacturing, to thereby thoroughly impregnate the brush material within the envelope and firmly hold it in position."

Thus it will be seen that the patented article comprises three elements, namely:

1. Brush material;

2. An envelope enclosing the butt ends of the brush material with the free ends projecting from the envelope; and

3. Cementitious material to impregnate and hold the brush material within the envelope.

The brush material projects a sufficient distance outwardly from the envelope to overlap successive shingles when laid as shown in Fig. 1 of the patent drawings, thereby producing the effect of a thatched roof.

The usual defenses are interposed, and they are:

1. Invalidity of the claims in view of the prior art; and

2. Non-infringement.

### The Prior Art.

Patent No. 1,492,609, granted on May 6, 1924, to J. T. Simpson, was particularly stressed during the trial, defendant averring that it is a complete anticipation of plaintiff's patent. The invention described in that patent relates to a covering for roofs or exterior walls of buildings, which may also be used either as an interior or exterior decoration. The material is set up in the form of individual shingles, comprising a flexible fire-proof and water-proof envelope, in which is embedded a series of reinforcing wires. These wires extend from the envelope, the projecting portions carrying ornamental bodies. The envelope is formed of a sheet, the flaps of which may be secured together by cement and the said cement also serves to fix the reinforcing wires to the envelope.

It is plain that this construction cannot be used to simulate a thatched roof and that it does not embody plaintiff's brush material nor his asphalt material.

Defendant, in an effort to supply the missing elements referred to, relies on Patent No. 273,692 to Kihnemam and on Patent No. 1,259,031 to Mather. These patents disclose brushes. They are in an art which is so remote from the roofing art that they merit no serious consideration.

Defendant further relies on another patent to Simpson, No. 1,492,610, which was cited by the Examiner during the prosecution of the application which resulted in the patent in suit, but it appears that the claims in issue herein were limited in view of the last-mentioned patent.

Defendant calls attention to other prior art patents as showing that he has taken his construction from the last-mentioned patents rather than from anything disclosed in plaintiff's patent. Consequently, these patents need not be considered in deciding the validity of the claims in suit. I therefore conclude that the claims are valid over the two Simpson patents, taken alone or in combination with the Kihnemam and Mather patents.

### Infringement.

The defendant was the president of a corporation which operated under a license from the plaintiff. The license was cancelled, but after the cancellation the licensee continued to manufacture under the patent until the corporation went into bankruptcy. Thereafter and toward the end of January, 1938, defendant started his present business. Instead of assembling the roofing at his plant in Stamford, the brush material was stitched to one side of a buckram backing and the backing was adhesively secured to a paper strip by cementitious material. Later on the buckram backing was omitted and the brush material was stitched together and the butt ends thereof dipped into asphalt-

um. It appears that in using either one of the two forms the defendant used less asphaltum per square than the plaintiff used.

In laying the brush material on a roof, it might possibly be applied in a non-infringing manner when the use of an envelope is avoided. However, both forms of brush materials prepared by the defendant are capable of being used and are actually used in connection with overlapping layers of roofing paper, such as asbestos paper impregnated with asphalt, and in that way the butt ends of the brush material are disposed within envelopes. Defendant avers that there can be no infringement because the asphalt in his construction is not provided for cementing or holding the brush material within the envelope but serves merely for protection against dampness and weather, and that it is the nails which hold the brush material in place rather than the cementitious material, and, as noted supra, the latter is used in smaller quantities than in plaintiff's construction. Defendant further claims that there can be no infringement because plaintiff's patent is limited to a construction in which the butt ends of the brush material are surrounded and enclosed during shipment and laying.

While it might be one of the objects of plaintiff's invention to provide a pre-formed thatch roofing, it is not the sole purpose thereof and, while defendant uses less asphaltum than plaintiff, it still remains a fact that the primary purpose of the asphaltum in defendant's construction is to hold the brush material within the envelope. The nails used by defendant aid in the holding operation but their main purpose is to secure the roofing to the roof. While the brush material supplied by the defendant is capable of being installed in an infringing or a non-infringing manner, it is obvious that it materially contributes to the installation or use of the roofing in an infringing manner. Therefore, defendant is guilty of contributory infringement. Young Radiator Co. v. Modine Manufacturing Co., 7 Cir., 55 F.2d 545–548. It appears clearly from the testimony adduced that the finished product of the defendant is in all respects identical with the construction described and claimed in and by the patent in suit, and more particularly by the claims in issue here.

In Westinghouse Electric & Mfg. Co. v. Precise Mfg. Corp., 11 F.2d 209, the Circuit Court of Appeals of the Second Circuit held that the sale of a device capable of an infringing use, with intent that it shall be so used, is an infringement of a patent, even though it is capable of a non-infringing use, and even though there may be instructions given that it shall be used in a non-infringing way. Thomson-Houston Electric Co. v. Ohio Brass Co., 6 Cir., 80 F. 712; Parsons Non-Skid Co., Limited, v. Atlas Chain Co., 2 Cir., 198 F. 399; Individual Drinking Cup Co. v. Errett, 2 Cir., 297 F. 733; Electro Bleaching Gas Co. v. Paradon Engineering Co., Inc., 2 Cir., 12 F.2d 511; Graham Paper Co. v. International Paper Co., 8 Cir., 46 F.2d 881, 887. In view of the foregoing I hold that the defendant has infringed all of the claims in issue herein.

### Unfair Competition.

It appears that the plaintiff is the owner of a Canadian patent corresponding to the patent in suit and that Thatched Roof Manufacturing Co., Limited, a Canadian corporation, operates under a license from the plaintiff, and manufactures, sells and installs, in Canada, roof coverings under the trade name or trade mark "Old English Thatch". This Canadian Company was organized in 1933 and the plaintiff is connected therewith.

Defendant became associated with the plaintiff in 1935 in the exploitation of his patent, was a director, vice-president and secretary of the Canadian corporation. In the summer of 1936, defendant went to New York, taking with him about 500 copies of the advertising circulars of the Canadian company, Exhibit F, for the purpose of interesting American capital in plaintiff's patent. A corporation was organized in Stamford, Connecticut, bearing substantially the same name as the Canadian company, namely, Thatched Roof Manufacturing Corporation. Defendant and his associates paid the plaintiff $10,000 in cash and promised to pay a royalty of 60 cents per square with a yearly minimum of $3,000. The United States corporation later on went into bankruptcy, as above stated, but defendant continued to sell the product manufactured by him under the trade name or trade mark "Old English Thatch", that is to say under the very same mark under which it was sold in Canada by the Canadian corporation.

In addition to the charge of infringement of his patent, plaintiff alleges unfair competition by the defendant. While there

may be some equities in this case, I cannot escape the conclusion that the suit was instituted by the wrong party against a wrong party, having in mind that the plaintiff's licensees, Thatched Roof Manufacturing Co., Ltd., and Thatched Roof Manufacturing Corporation, are not parties to this suit, and, even if it be assumed that one or the other or both of these licensee corporations may have a cause of action against the defendant for unfair competition, that right does not accrue to the plaintiff. If there is any basis for the charge of unfair competition, it must be against the defendant as unfairly competing with the plaintiff and not with the plaintiff's licensees.

On the other hand, while plaintiff pleads that roofing materials have been made, sold and used by him in Canada, he does not even plead that such roofing materials have been made, sold and used by him in the United States. As a matter of fact, there is no proof whatever that plaintiff has ever made, sold or used such roofing materials in his personal capacity at any time or at any place whatsoever.

It is clear, therefore, that plaintiff's claim for unfair competition must fail because it is fundamental that one cannot acquire rights in a trade mark or trade name without actual use. Even if we assume that plaintiff may have manufactured, sold or used roofing material under the name "Old English Thatch" in Canada, as set forth in the bill of complaint, plaintiff still cannot succeed because his rights are limited to the country or territory in which the trade mark or trade name has been established by him in actual commercial use, as was held in Charles Broadway Rouss, Inc., v. Winchester Co., 2 Cir., 300 F. 706. In that case Judge Rogers, speaking for the Circuit Court of Appeals, in reversing this court, at page 723 said: "There can be no unfair competition, unless the plaintiff is in fact a rival in the particular territory for the trade which the defendant secures therein. Where a plaintiff has established a trade-name which is not strictly a trade-mark, as indicating that goods bearing it are put upon the market by him, he is entitled to protection against unfair competition in its use by others only within the territorial boundaries where he has established his trade-name by actual commercial transactions, and not outside that territory. Kaufman v. Kaufman, 223 Mass.

104, 106, 107, 111 N.E. 691. And see the decision of this court in Thomas J. Carroll & Son Co. v. McIlvaine & Baldwin, 183 F. 22, 28, 105 C.C.A. 314, affirming [C.C.] 171 F. 125."

In conclusion, I find that claims 1, 2, 3, and 4 of the patent in suit are valid and infringed, but that the bill must be dismissed insofar as it relates to unfair competition.

It is believed that the findings of fact and conclusions of law above stated are sufficient to comply with rule 52 of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, and an order so providing must be embodied in the decree which will be submitted for signature, properly consented to as to form.