## NATIONAL ELECTRIC PRODUCTS CORPORATION v. CIRCLE FLEXIBLE CONDUIT CO., Inc.

### No. 162.

Circuit Court of Appeals, Second Circuit.

Feb. 6, 1933.

Cooper, Kerr & Dunham, of New York City (Drury W. Cooper and John C. Kerr, both of New York City, of counsel), for appellant.

Usina & Rauber, of New York City, for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Two patents are charged to be infringed in this suit. The court below held that the appellant presented no evidence of invention as to either. On this appeal appellant claims invention as to claims 2, 7, 8, 9, and 10 of patent No. 1,687,013. It abandons the other claims as well as the second patent litigated below, No. 1,804,549.

Patent No. 1,687,013 is an invention for improvements in the construction of electric conductors having metallic sheaths known as armored cables or conductors. These cables theretofore consisted of two or more insulated conductors inclosed in an interlocked covering of insulated material as braided or woven fabric about which the spirally wound metallic sheath was placed. There were objections to this construction. They were (a) in making electrical connections, a knife or other sharp instrument is used to strip the braided cover of the insulation off the wires, and this has always been at the risk of cutting through the rubber insulation and injuring the wires; (b) when flexible armored cables are installed, they must be cut to different lengths, and, in cutting the metal sheathing with a hack saw or other tool, the workman is apt to cut into and through the insulation and almost invariably a rough edge or burr will be left upon the cut end of the metal sheathing which may later cut through the insulation and produce a short circuit; (c) in braid-covered wires, which are usually treated with a coating of wax, there is apt to be a slide or creep within the metallic sheathing causing friction, especially at sharp bends, which is free to wear or cut through the insulation resulting in electrical difficulties.

The patent we are considering was applied for December 7, 1927, and issued October 9, 1928. Claim 2 describes an armored electric conductor or cable comprising a combination of elements which include insulated wires, a protecting covering of insulating material surrounding the insulated wires, a metallic sheath inclosing the protecting covering of the insulated wires, and an insulating bushing interposed between the insulated wires and the metallic sheath to protect the insulation of the wires from the edge formed at the end of the metallic sheath. Claims 7, 8, 9, and 10 describe armored conductors or cables comprising the same combination of elements as claim 2, with the additional feature of providing clearance space for the insertion of the bushing by employing a form of protecting covering which is adapted for ready removal from within the end of the metallic armor; that is, a protecting covering of a spirally wound compressible material which can be readily unwound and pulled out by hand from within the end of the armor without the use of any cutting tool.

The inventor solved the problems referred to by providing, instead of the old braided outer covering, a spirally wound overlapping layer of compressible material about the assembled conductors, the material providing additional protection to the insulated conductors during the operation of cutting the armor and also being adapted to be readily unwound and stripped off the conductors by hand, thus avoiding the use of a knife or other sharp instrument. The spirally wound compressible material which co-operates in the introduction of the insulated bushing, as is necessary, provides space, between the metallic armor and the insulated conductors for the insertion of the bushing; that is, the space is provided by unwinding and turning out a few turns of the compressible material inside at the severed end of the armor. By adopting the spirally wound overlapping layer of compressible materials about the assembled conductors into which the convolutions of the metallic armor would sink, thus interlocking the armor and the conductors, danger from the sliding or creeping movement of the conductors within the armor was prevented.

This new armor bushing cable made under the patent developed protection which the industry was looking for and proved of great utility and benefit. Manufacturers of armored cable thus substantially reduced fire hazard. The utility of the invention was quickly recognized by its universal adoption by electrical contractors and inspectors as this record discloses. It met with the general approval of electrical inspectors throughout the country, and the old type was largely abandoned. Cable manufacturers obtained licenses and paid royalties for the use of the invention. Such use and acknowledged merit materially assisted in sustaining the invention. We think there was invention.

The court below held claim 2 of the patent invalid for lack of invention, in view of the British patent to Moseley, No. 2969 (1873), to Wilson, No. 102,137 (1916), to Wuerman, No. 182,489 (1923), to Wright, No. 206,275 (1923), and the French patent to Daram, No. 544,018 (1922). The Moseley patent shows a piece of rigid pipe conduit through which the wires had to be drawn with an insulating bushing in the end of the pipe to protect the wires. It does not show an armored cable.

There were no protective coverings or similar material separately applied to the insulated wire. There were three layers of wrappers of pure India rubber, which formed the basic insulation of the insulated conductors. It is a very old patent (1873). The application to the insulated wires of the layer of cotton or hemp, saturated with a sticky solution as boiled oil or gum, the whole then being covered with a ribbon or tape of tinned copper, resulted in a product entirely different from the appellant's armored bushed cable. The layer of cotton or hemp was longitudinally applied, secured to the insulated wires by an adhesive compound, could not be readily stripped from the wire by hand without cutting and could not be removed from within the end of the copper ribbon or tape without disturbing it. Moseley's invention was long before high-voltage currents. It does not suggest the patent in suit. The patent to Wilson shows and describes a cable consisting of several insulated wires with an outer covering of braided wire and a metallic ferrule having an inner sleeve portion fitting inside of the braided wire covering and an outer sleeve portion bent back over the end of the braided wire. The object of this invention was to provide a device to confine the frayed unfinished ends of the braided wire jacket in order to facilitate the operation of the connecting wires of this kind to a junction box. It does not describe either the interposition of a spirally wound protected covering of compressible material between the insulated wires and the braided wire jacket or the provision of an interior insulated bushing to protect and increase the insulation. Its ferrule is metallic. The Wuerman patent shows a rigid pipe conduit equipped with a leading-in tube or bushing to facilitate the drawing of wires into the conduit. There is no claim that it is an armored cable. The Wright patent is a bushing or ferrule to fit the ends of the conduit, both inside and out, to protect the insulation of the wire from being cut or injured by burrs or rough edges on the ends of the conduit while being drawn through. It does not suggest an armored cable, but merely a bushing and a rigid conduit with insulated wires lying loosely therein. There was no protective covering between the insulated wires and the rigid metallic conduit.

The Daram patent relates to "flexible sheathing for electric conduits," not armored cable. Daram describes flexible or protective sheathing for electrical conductors which would cure defects which had been found to exist in the old lead sheathing which was flexible but mechanically weak. After stating the objection to the rigid conduit by explaining his proposed construction, he states that the inner insulation consists of a tube of suitable insulating material which is to be inserted inside the flexible tube thus constructing two tubes, the inner of paper, cardboard, or similar material, and the outer of flexible metal. The electric wires are protected by a thick insulating cover made of paper, cardboard, or other material impregnated with a tar base insulating and waterproofing substance. The electric wires are rubber covered or otherwise insulated from each other to prevent short circuiting. Daram's paper bands are applied flatly and tightly for the purpose of giving a smooth finish to his pasteboard tube, and, being applied upon a tar impregnated adhesive surface, are incapable of performing the functions of appellant's paper bands. They are in no sense a protecting covering of the insulated wires. He makes it clear that a pasteboard tube is protective covering. It nowhere shows the use of bushings in combination with Daram's flexible tubes to protect the insulation from injury from rough edges, burrs, or severed ends of the metallic armor, and it is doubtful whether Daram's paper bands being tightly wound on tar impregnated adhesive base could be removed by hand without cutting even the exposed portions of the conductors. They could not be removed from beneath the end of the metallic sheath. Bushings could not be inserted in this structure without removing from beneath the armor several turns of paper bands and possibly some of the pasteboard tube. This patent does not show the physical structure of the armored bushed cable as provided for in the patent in suit.

Moreover, the suggestions of these foreign patents, so far as the record goes, have not had the test of competition which the appellant's patent has had in order that they may be considered as accomplishing the desired result. They do not account for the complete and operative invention which this patent discloses. The suggestions of parts thereof separately are not capable of being put into practical operation and of accomplishing the result the appellant has produced. Seymour v. Osborne, 11 Wall. (78 U. S.) 516, 555, 20 L. Ed. 33; Westinghouse Air-Brake Co. v. Great No. Ry. Co., 88 F. 258, 263 (C. C. A. 2); Skelly Oil Co. v. Universal Oil Products Co., 31 F.(2d) 427, 431 (C. C. A. 3); Permutit Co. v. Harvey Laundry Co., 279 F. 713 (C. C. A. 2). The prior publications do not disclose the combination which the appellant's patent provides,

and they do not support the defense of prior knowledge of the invention.

The appellee's flexible cable is comprised of insulated wires about which there is a covering of insulated material consisting of spirally wound strips of paper crumpled transversely so as to be sufficiently compressible to constitute a cushion that fits within the spirally wound metallic armor by which the insulated wires and their protective coverings of insulating material are in turn surrounded. In the sale of its product, the appellee provides that the ends of the cables be equipped with bushings. The locations of the bushings are not known until the cables have been cut the desired length during the operation of installation, but each coil of cable sold by appellee has attached to it a small bag containing a supply of bushings formed of flexible, yielding, fibrous material, and it is intended that these bushings be inserted by the purchaser in the accompanying cable between the metallic armor and the insulated conductor at the ends where the metallic armor is severed during the operation of installation. Such cable, when installed and equipped with the bushings, infringes claim 2 of the patent. The bag of bushings attached to the cable has printed thereon, "Must be used without removing paper or braid." The appellee's position is that the necessary space for insertion of the bushings is not gained by the removal of the spirally wound paper, but by compressing the rubber insulation sufficiently to permit the insertion of the bushing. But we think claims 7, 8, 9, and 10 are infringed in spite of this contention. There is no doubt that the appellee's cable is so constructed that the paper wrapping can be readily stripped off. If the appellee makes its cable with sufficient clearance between the paper wrapping and the metallic sheath to permit the insertion of the bushing without the removal of the paper, of course it would make the removal of the paper easier. The paper is always necessarily unwrapped and removed from the protecting ends of the insulated wire in making connections. The workman could, if he wanted to, and probably would, remove several turns of the paper in order to enable him to put on the bushing. These directions as to the nonremoval of the paper are not mandatory. The appellee puts in the hands of the purchaser of the cable a combination of elements called for by the claims in suit which are adapted for use as the patent in suit teaches. They fully realize the purpose of the invention in suit and the teachings thereof, and, even though they go through the form of instructing how to use

the cable in an alleged noninfringing way, that is not sufficient to avoid infringement. Westinghouse, etc., Co. v. Precise Mfg. Corp., 11 F.(2d) 209 (C. C. A. 2); Sandusky Foundry & Machine Co. v. De Lavaud, 274 F. 607 (C. C. A. 6).

The patent in suit is valid and infringed as to all the claims now relied upon.

Decree reversed.

CHASE, Circuit Judge (dissenting).

As I see it, the patentee did no more than take the well-known armored cable already in wide use commercially and substitute for the customary braided fabric next the armor compressible material spirally wound. In practice, that means that he used paper laid in spirals instead of the braided fabric. Though Daram dealt with a conduit instead of a cable and his product may well be said to have been in many respects dissimilar to that of the patent, he did disclose spirally wound paper in the same place relatively. To be sure, his paper so wound was stuck to a cardboard casing and not meant to be pulled off; yet the thought that paper was usable there was hardly a new one after Daram. That paper so used without adhesive could be pulled out to some extent depending upon the closeness of the winding of the outside metal sheath seems obvious enough. And equally obvious is the fact that when pulled out and broken off some space would be provided for the insertion of a bushing. Bushings were old.

Nor can I believe that extensive use in this instance should be considered to have any effect on the patentee's disclosure as the basis of a patent. The opportunity was seized upon to fix prices by means of licenses under the patent, and apparently made it advantageous to become a licensee on that score alone, since flexible armored cable as a whole which the patent touched only in a very minor degree from the standpoint of cost of manufacture, and probably only to make production actually cheaper, was included in the price fixing.

Furthermore, the defendant's bushing is to be put over the paper without pulling any out to provide added space for its insertion, and its cable is made so that this can be done. Its product is sold with instructions to put the bushing over the paper. By so doing, the wires at the cut end are better protected to the extent that the paper affords any protection at all, and so the defendant, it seems to me, not only does not infringe, but actually provides what is a better product by making a

cable that can be bushed without destroying any insulation at the cut end. Only by assuming that the user will put in the bushing in the way of the patent, notwithstanding the instructions of the defendant and sacrifice whatever protection the paper under the bushing will give to the wires can infringement, even contributory, be made out.

Though deference to the opinion of my brothers is not without its appeal, I would affirm the decree of the District Court.