PETER HEIBEL & SONS PLANING MILL & MFG. CO. v. CORRUGATED PAPER PATENTS CO.

(Circuit Court of Appeals, Eighth Circuit. October 29, 1917.)

No. 4683.

PATENTS ☞328—INVENTION—MACHINE FOR MAKING CORRUGATED PAPER.

 The Langston patent, No. 878,403, for a machine for making double-faced corrugated paper, *held* void for lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by the Corrugated Paper Patents Company against the Peter Heibel & Sons Planing Mill & Manufacturing Company. Decree for complainant, and defendant appeals. Reversed.

Hans v. Briesen, of New York City, for appellant.

Frederick R. Cornwall, of St. Louis, Mo., and Lawrence E. Sexton, of New York City (Frederick H. Bowersock, of Bridgeport, Conn., on the brief), for appellee.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. This is a suit by the Corrugated Paper Patents Company against Peter Heibel & Sons Planing Mill & Manufacturing Company for infringement of patent No. 878,403, February 4,

1908, to Langston, for improvements in machines for the manufacture of cellular board or double-faced corrugated paper. The plaintiff was given an interlocutory decree, and the defendant appealed.

The patent in suit relates particularly to a method and apparatus for applying the second facing sheet to single-faced corrugated paper "and pasting the parts together under a resilient but uniform pressure and while heat is being applied thereto." The first five claims are involved. The claims are as follows:

(1) "An apparatus of the character described, comprising a stationary heater having a smooth surface, and means spaced therefrom and movable in relation thereto for advancing the paper and holding it in resilient engagement with said heater."

In claim 2 the movable means spaced from the smooth surface of the heater is described as a "pressure-applying mechanism."

Claim 3 says the mechanism is movable substantially parallel to the surface of the heater.

(4) "A machine for making double-faced corrugated paper, comprising means for drawing a strip of single-faced corrugated paper and a strip of facing paper through the machine each under tension, means for applying paste to the crowns of the corrugations of the corrugated strip and then bringing the facing strip into contact therewith, a stationary heater in engagement with which the facing strip passes, and means traveling with said corrugated strip for holding said facing strip in engagement with said stationary heater."

(5) "A machine for making double-faced corrugated paper, comprising a stationary heater having a smooth surface, and an endless belt traveling adjacent said surface and serving to advance the paper, and also to hold it in resilient engagement with said stationary heater."

It is stated in the specifications that the first facing sheet is applied to the corrugated paper "in any suitable well-known manner," and that the essential portion of the invention claimed resides in the applying of the second facing sheet. It is said that the crowns of the corrugations are first treated with paste or other adhesive, the second facing sheet comes adjacent the heated surface, while the heavy belt above engages the opposite facing sheet already in place, and holds the product with uniform pressure against the heated surface. The moving belt aids in advancing the material, its freedom of movement between the pulleys permits adjustment to any unevenness in the corrugations, and its weight is generally sufficient to provide the necessary pressure against the smooth heated surface, and aids in pasting and in expelling the moisture.

Double-faced corrugated paper was made long before the Langston patent. There are from 100 to 150 different machines used in the art, many of which were patented before Langston entered the field. The patent in suit and the prior art should therefore be carefully examined, to see whether he made such an advance as merits the dignity of invention. There are some striking resemblances between the patent in suit and the French patent No. 362,835, April 14, 1906, to the Société Lacaux Frères. As with Langston, the Lacaux machine is for fixing a sheet of paper to corrugated pasteboard the opposite side of which has already been so covered. The uncovered corrugations carry glue or paste and the second sheet is affixed from below. There is the same endless belt above, which accompanies the corrugated filler and the facing paper in the movement of pasting, upon which plaintiff relied

much at the hearing. The same resiliency in the belt and adjustability to unevenness in the product appears in Lacaux. The belt is described in the second claim of that patent as:

"A heavy metal fabric, movable and endless, whose weight keeps the corrugated paper covered on one side pressed against the sheet of smooth paper serving to cover it."

The difference between them is this: In Langston the sheet of paper to be pasted to the corrugated pasteboard above passes over the smooth heated surface of a stationary table, while in Lacaux the stationary table is not heated, but is covered with felt, over which moves a flexible metallic conveyor, which has previously received its heat by contact with a cylinder equipped with gas burners or other devices. Had Lacaux discarded their conveyor and cylinder, removed the felt from the table, and applied the heat directly to a table surface capable of receiving it, they would have anticipated Langston in all features material here.

In patent No. 545,354, August 27, 1895, to Ferres, the material passes between two movable aprons or belts, the upper one of which rests upon and presses the facing paper to the corrugated pasteboard. It adds nothing to the function actually performed to describe the pressure as adjustable or resilient. The lower belt, on which the product rests and is carried, moves horizontally over a stationary metal plate which is heated by gas jets underneath and communicates the heat to the belt. The metal plate answers to Langston's table surface. By removing the lower belt and having the product move over a smooth stationary metal plate, Langston's machine would appear, except that in Ferres the second sheet of facing paper is put on from above, instead of from below. The upper apron or belt, which sags and rests upon the paper, is heated directly by burners. In mechanical arrangement and function there is little difference between the two devices. If Langston had preceded Ferres, and that is a test in such cases, it could have been said that the depending belt of the latter was the equivalent of Langston's, and that as to the lower members of the structures Ferres could not escape infringement by interposing his belt between the heated table surface and the pasteboard.

The patent to Duerden, No. 620,756, March 7, 1899, discloses the idea of passing the corrugated pasteboard and facing papers between two surfaces to which heat is directly applied, and which have a bearing across the product. It is specified that endless bands may be used to facilitate the passage between the heaters. Similarly, in patent No. 618,376, January 24, 1899, to Chapin, the corrugated pasteboard, already faced on one side, and the facing paper for the other side, are passed between two heaters or steam boxes, arranged one above the other on a frame. The lower is fixed, and presents a plain smooth upper surface. The upper one, with a like lower surface, may be raised or lowered as needed, but is not as automatically adjustable as the belts of Lacaux, Ferres, and Langston. Chapin's lower heater and Ferres' upper belt would substantially make Langston's device.

In Ferres' patent, No. 746,807, January 15, 1903, the strip of single-faced corrugated paper, to which paste has been applied, and the strip

of plain facing paper to be affixed, are drawn between the smooth, highly polished surfaces of two heaters, one above the other. In all essential particulars involved in this case, the two patents to Ferres of 1895 and 1903 disclose the Langston machine. All that was needed was to substitute the upper belt of the first patent for the upper heater of the second, and to reverse the relative positions of the single-faced corrugated board and the second facing strip. The doing of that was such an obvious expedient as not to involve invention. The product would then have been drawn over a smooth, stationary, heated surface, and its movement aided by an endless, depending belt pressing resiliently thereon.

The plaintiff urges a decree rendered in its favor against the manufacturer of defendant's machine, in the Southern District of New York. It is apparent from the opinions of that court that the presentation of the case made to it by the parties was incomplete and fragmentary. Anticipation was not pleaded as a defense, and the parties seemed for some reason to be content with disclosures of evidence narrowly and by piecemeal. The court was not advised of the extent and bearing of the prior art, such as appears in the record before us.

The decree is reversed, and the cause is remanded, with direction to dismiss the petition.