## AUTOKRAFT BOX CORPORATION v. NU-BOX CORPORATION.

### No. 885.

District Court, M. D. Pennsylvania.

Oct. 28, 1936.

John Dashiell Myers and Chester C. Baxter, both of Philadelphia, Pa., and O'Malley, Hill, Harris & Harris, of Scranton, Pa., for plaintiff.

Albert M. Austin, Furman Rinehart, and Reuben T. Carlson, all of New York City, for defendant.

James A. Montgomery, Jr., of Pepper, Bodine, Stokes & Schoch, of Philadelphia, Pa., amicus curiæ on behalf of National Paper Box Manufacturers Ass'n.

JOHNSON, District Judge.

This is a bill in equity charging infringement of letters patent No. 1,646,563 issued October 25, 1927, to Stokes & Smith Company on an application filed April 8, 1926, by John R. Sonneborn. The plaintiff is the assignee and owner of the patent.

The patent relates to apparatus and methods for wrapping boxes. The following claims of the patent are in issue: 3, 4, 5, 8, 13, and 14 relating to a wrapping method; 15 and 16 relating to a "biasing" method; 20 and 39 relating to apparatus.

By disclaimer filed after suit was instituted, the wrapping method claims were limited to a method of wrapping boxes having end walls higher than side walls, such as the conventional cigar box.

The art of wrapping boxes was well developed prior to the patent in suit. The art of edging wooden cigar boxes by hand

was well known. In the hand edging method, in which an edging strip about three-fourths of an inch wide is used, the lower part of the edging strip is pasted along the top of the outside vertical surface of the two end walls and the front side wall. This lets the free portions of the edging strip extend about one-half an inch above the horizontal surface of the ends and side walls. The upstanding portion of the edging strip is torn near each end of the front side wall, leaving a tab portion upstanding at each end of the side wall. The free portion of the edging above the front side wall is turned over into engagement with the horizontal surface of the front side wall by an ironing motion of the hands and the remaining free portion of the edging is folded into engagement with the inner vertical surface of the front side wall. The tab upstanding at the left end of the front side wall is folded down into engagement with the horizontal surface of the left end wall; the edging standing above the left end wall is turned over into engagement with the horizontal surface of the left end wall by an ironing motion of the hands, and the free portion of the edging is folded into engagement with the inner vertical surface of the left end wall. The right end wall is then covered by the same method as the left end wall.

Prior to the patent in suit, it was common to cut wrappers to fit practically all shapes of boxes and to notch them at the corners. The notch produced a "tab." Prior to the patent one Chester G. Myers had a wrap to fit a cigar box and this wrap included "tabs."

The standard Stokes & Smith machine for applying wrappers to pre-formed boxes had long been in use. This machine is flexible and was adapted to wrap different shapes and sizes of boxes. It had been used to wrap paperboard boxes whose end walls were higher than the side walls.

The movement or cycle of operation of the standard Stokes & Smith machine is as follows: (1) After the box is first placed on the form block; (2) the machine moves the box vertically downward and rollers are encountered which roll the outside surface of the box side walls from the bottom to the top; (3) the downward movement is then halted while corner lap plates wipe past the four corners of the box along the vertical surface of the two end walls; (4) the movement downward is then continued and rollers are encountered which roll the outside surface of the two end walls, from the bottom to the top; (5) the downward movement is then halted while side turn-in fingers pass inwardly over the top of the sides and ends of the box; (6) the fingers are retracted and a form block is permitted to fall within the box.

The wrapping method used in the standard Stokes & Smith machine is as follows: (1) The bottom of the box is placed on a section of the wrapper; (2) the side panels of the wrapper are pushed upwardly against the side walls of the box, leaving portions of the wrapper extending along the top of the box side walls; (3) extremities of the side panels, or corner lap sections, are pushed against the end walls of the box; (4) the end panels are then pushed upwardly against the end walls of the box, leaving portions of the wrapper extending above the top of the box end walls; (5) the upstanding portions of the side and end panels are then pushed over the tops of the box walls in a horizontal direction; (6) the horizontally extending ends of the wrapper are then pushed down vertically onto the inner box walls.

Prior to the patent in suit, cigar boxes were customarily made of cedar wood and trimmed with hand applied edging strips. Cedar wood became expensive, resulting in efforts to substitute cheaper wood. To do this it was necessary to cover the boxes with paper wraps to hide the unsightly appearance of the cheaper wood and, at the same time, to simulate the appearance of cedar which had become distinctive to the trade. In order to make the substitution, the cost of wrapping, together with the cost of the cheaper wood, must not wipe out the saving resulting from the use of cheaper materials. This therefore required cigar boxes to be wrapped by automatic machinery, since only through such machinery and quantity production could the necessary saving be obtained. Paper boxes could not be used; they were not favorably received by the trade because the paper would absorb the moisture of the cigars.

Thus the problem to be solved was to wrap neatly and completely cigar boxes by machine. This problem was hard to solve because the cigar box walls were of substantial thickness and it was difficult to apply wrappers by machine onto the thick top horizontal edges so that the wrapper would be flat and smooth thereon, thus avoiding an

796

undesirable puffiness of the wrapper. This problem was further complicated because the horizontal top edges of the end walls were higher than the horizontal top edges of the side walls, thus producing offset corners which were difficult to wrap by machine.

In attempting to solve this problem, the predecessors of the plaintiff went to the Stokes & Smith Company, manufacturers of the Stokes & Smith wrapping machines, and the problem was assigned to Mr. Sonneborn, Stokes & Smith's assistant chief engineer.

In experimenting Sonneborn first wrapped the box on the standard Stokes & Smith machine with unsatisfactory results. He then changed the side turn-in finger from a straight piece of metal to one having embossed ends which would ride over the top edges of the box end walls and turn down the tabs of the wrapper onto the horizontal surface of the end walls. This was a new use for embossed fingers. Prior to this time a standard Stokes & Smith machine had one pair of straight side turn-in fingers and a pair of end turn-in fingers with embossed ends. The end fingers were embossed to clear the side fingers. But while these rigid embossed side fingers turned down the wrapper tabs and completely covered the offset box corners they did not prevent puffiness of the wrapper because they had to clear the top of the box or they would strike and break the box. Finally Sonneborn made an entirely new turn-in finger structure which was not rigid but which had a flexible spring action. This structure is illustrated as Fig. 14 in the drawings of the patent in suit. It did not clear the top of the box but was intended to ride over and on the horizontal surface of the box walls with an ironing or "biasing" action. The effect of this finger was to iron down the wrapper onto the horizontal surface of the box walls and avoid puffiness.

While the new turn-in structure solved the problem of puffiness, it did not wrap the offset corners of the box. Sonneborn solved this problem by attaching to the corner lap plates a small U-shaped member of metallic spring material, one arm of which is longer than the other and whose end is upturned. This device is illustrated as Fig. 17 in the drawings of the patent in suit. The effect of this device was to fold the upstanding wrapper tab onto the horizontal surface of the box end wall as the corner lap plate pushed the corner lap section of the wrapper onto the box end wall. This device solved the problem of neatly and effectually wrapping the offset corners of the cigar box.

Having made these new devices and others not in issue, to be attached to a well known wrapping machine, Sonneborn obtained the patent in suit for the new apparatus and also a new method for wrapping boxes.

By disclaimer filed after this suit was commenced, plaintiff disclaimed from the method claims 3, 4, 5, 8, 13, and 14 any method of applying a wrapper "except to a box wherein the side walls thereof are of less height then the end walls thereof" and "except a method wherein the portion of the side panel which is folded into engagement with the horizontal surface of a box end wall is not included within a corner lap section, and is folded into engagement with the horizontal surface of the end wall in the direction of the length of that wall."

The steps of the wrapping method of the patent in suit, as used by the plaintiff, are as follows: (1) The bottom of the box is placed on a section of the wrapper; (2) the side panels of the wrapper are pushed upwardly against the side walls of the box, leaving a portion of the wrapper extending above the top of the box side walls; (3) extremities of the side panels, or corner laps, are pushed against the end walls of the box and the tabs are turned over the top horizontal surface of the end walls; (4) the end panels of the wrapper are pushed upwardly against the end walls of the box, leaving a portion of the wrapper extending above the top of the box end walls; (5) the upstanding portion of the side and end panels of the wrapper are then pushed over the tops of the box walls in a horizontal direction; (6) the horizontally extending ends of the wrapper are then pushed down vertically onto the inner box walls.

The steps of the "biasing" method of the patent in suit, to overcome puffiness, are as follows: (1) The bottom of the box is placed on a section of the wrapper; (2) a wrapper panel is folded into engagement with the box wall; (3) a surface is moved transversely of said box wall simultaneously to fold a portion of the turn-in section of said panel into engagement with the horizontal surface of said box and apply (or while applying) pressure to said panel portion to secure it to said horizontal surface.

About 1929, when cellophane became relatively cheap and commercially accessible, cigar manufacturers began to wrap each cigar in a separate cellophane wrapper. Such wrappers acted as a humidor and prevented the cigars from drying. Prejudice against wrapped boxes made totally or almost wholly of paper was gradually overcome and the use of such inexpensive paper boxes was increased extensively.

The defendant wraps cigar boxes in standard Stokes & Smith machines and uses notched wrappers. The defendant uses embossed turn-in fingers in the same manner as Sonneborn did in his experiments as set forth above. Accordingly, the wrappers on the horizontal surface of the box walls are puffy and are smoothed down by hand after the machine operation. For a time defendant used end turn-in fingers having spring supported rollers.

The plaintiff brought its bill in equity to enjoin the defendant from infringing its patent apparatus and its box wrapping and biasing methods. The plaintiff admits that defendant's use of the rigid embossed turn-in fingers do not infringe the patented turn-in apparatus because they cannot "bias" and remove puffiness. The plaintiff contends, however, that defendant's use of the spring mounted roller end turn-in fingers infringes the patented turn-in apparatus because the rollers contact and "bias" or iron the wrapper on the horizontal surface of the box end walls and remove the puffiness. The plaintiff further contends that the defendant in using the roller end turn-in fingers practices and infringes the patented "biasing" method. Finally the plaintiff contends that the defendant, whether using the roller or embossed turn-in fingers, practices, with immaterial changes in sequence, the patented wrapping method.

The defendant contends that Sonneborn's alleged inventions, as defined by the claims in suit, are lacking in patentable quality, since they were obvious to any one skilled in the art; that the claims in suit are invalid for anticipation by the prior art; that the defendant has not infringed the claims; and that the claims of the patent were rendered invalid by plaintiff's disclaimer.

■ The defendant has failed to show that the spring action turn-in finger invented by Sonneborn was anticipated by the prior art. This structure was novel and patentable. It solved the problem to which the inventor was directed. It was not obvious to any one skilled in the art; in fact, the solution of the problem took nine months time of the inventor Sonneborn, who was assistant chief engineer of Stokes & Smith Company, the manufacturer of standard wrapping machines, to which the apparatus was attachable.

■■ The roller end turn-in fingers used by the defendant are equivalents of the patented structure and infringe claims 20 and 39 of the patent in suit. The testimony is conflicting whether the defendant's roller end turn-in fingers "bias" and iron, but the weight of the evidence shows that they do. The rollers are spring mounted, thus making it possible for them to ride up over and on the horizontal surface of the box walls if they are properly adjusted. The defendant did not satisfactorily explain the purpose of the spring rollers if they were not to be used for a "biasing" operation. It was shown that the Stokes & Smith machine could be adjusted to enable the rollers to have a "biasing" effect. An apparatus may infringe where it is capable of infringing when used in an effective way. Shelby Steel Tube Co. v. Delaware Seamless Tube Co. et al. (C.C.) 151 F. 64, affirmed (C.C.A.) 160 F. 928, certiorari denied 212 U.S. 580, 29 S.Ct. 689, 53 L.Ed. 659; Wright Co. v. Herring-Curtiss Co. et al. (C.C.A.) 211 F. 654; Corrugated Fiber Co. v. Paper Working Machine Co. et al. (D.C.) 259 F. 283; Auditorium Ventilating Corporation v. Greater Rochester Properties, Inc. (D.C.) 59 F.(2d) 450, 456. The weight of the evidence here shows not only that the Stokes & Smith machine with the defendant's end rollers may be adjusted to "bias" but that it was "biasing" and consequently infringing at the time of plaintiff's inspection.

■ The problem given to Sonneborn was to wrap cigar boxes by machine. His efforts were directed to make attachments to the standard Stokes & Smith wrapping machine so that it could do the work. Sonneborn replaced the old standard Stokes & Smith turn-in fingers with the fingers that he invented and also added the U-shaped spring to the standard Stokes & Smith corner lap plated. These attachments did not change the cycle of operations or movement of the standard Stokes & Smith machine. The machine with the new attachments still had the same cycle as set forth above. However, the attachment had the effect of slightly changing the old wrapping method employed in the standard Stokes & Smith machine. The U-shaped spring on the cor-

ner lap plate had the effect of turning down a wrapper tab onto the horizontal surface of the box end wall. This took place when the corner lap plate turned in the corner lap section of the wrapper, or at the third step of the old wrapping method. In the method used by the defendant the tab is turned down at the time the embossed side turn-in fingers pass over the side wall which is at the fifth step of the old method.

The purpose of the tab is completely to cover and strengthen the corner produced by the raised end walls of cigar boxes. Prior to the patent in suit the old standard Stokes & Smith machine wrapped boxes with end walls higher than side walls so it was not new to wrap boxes with raised end walls. However, no tabs were folded onto the raised end walls. Long prior to the patent in suit the hand edgers completely covered the offset corners of cigar boxes in precisely the same method as is done in the patented method. However, the hand edgers did not use this method in connection with a one piece wrap. But it would not require invention to wrap a box by hand with a one piece wrap by the old method and then when all the wrapper panels are upstanding to cover the horizontal surface of the box walls and the corner of the box by the old method of the hand edgers. A combination of these two methods is the method of the patent in suit. It was not new to cut and notch wraps to fit different shapes and sizes of boxes. Having a notched cigar box wrap, such as that of Chester G. Myers, it would be a simple matter, especially to one skilled in the art, to wrap it onto a cigar box by hand. If the old wrapping methods were used, the tab would protrude upwardly in an unsightly manner. There would be only one place to put the tab; that would be on the horizontal surface of the end wall. The wrapping method claims of the patent in suit are not limited to machines but, according to the patent, may be performed by hand. Thus, in view of the prior knowledge and art, claims 3, 4, 5, 8, 13, and 14 of the patent in suit, relating to a wrapping method, are anticipated and are invalid; the method is obvious to any one skilled in the art.

The "biasing" method of the patent in suit is also anticipated and obvious in view of the prior art. There is nothing novel in any of the steps of this "biasing" method. No attempt has been made to limit these claims to a box having higher end walls than side walls. The gist of the patent "biasing" method is folding a portion of the wrapper over the horizontal surface of a box wall and "biasing" or ironing it down by moving a surface transversely of said walls. This is precisely what has always been done by hand edgers. They did not use a one piece wrap, but these claims are not limited to a one piece wrap. In the patent to P. S. Smith No. 690,377 there are disclosed certain steps to be performed by machine and others by hand. The box is machine wrapped in the usual way, until all of the panels are upstanding, as in step 4 of the old wrapping method. The upstanding portions of the wrapper are to be turned by hand over onto the horizontal box edges and then down into the interior of the box. The natural action of the hands would contact and iron the wrapper onto the horizontal surface of the box walls in a direction transversely of these walls. Thus the steps set forth in the patent to P. S. Smith are precisely those set forth in claims 14 and 15 of the patent in suit. These claims accordingly are invalid.

Since the claims limited by the disclaimer are invalid, it is unnecessary to determine whether the disclaimer rendered these claims invalid.

Findings of fact and conclusions of law which have been submitted are answered and filed herewith.

A decree in accordance with this opinion may be submitted.