### MATTHEWS et al. v. AGEE VENETIAN BLIND CO.

#### No. 401.

District Court, N. D. Texas,
Fort Worth Division.

Feb. 20, 1943.

D. A. Frank, of Dallas, Tex., and Ely & Frye, of Akron, Ohio, for plaintiffs.

Berl E. Godfrey and Cecil L. Wood, both of Fort Worth, Tex., for defendant.

JAMES C. WILSON, District Judge.

This is a suit by the plaintiffs alleging an infringement by the defendant of a patent which had been issued to plaintiff, Albert T. Matthews. They seek to restrain the defendant from manufacturing the device which they claim infringes the patent. Also seek an accounting, on the basis of those devices sold by the defendant, which constitute such infringement. The defense is that the patent is invalid, because of the prior art, citing about ten patents. The patented device is a very novel awning for windows and doors. Its novelty is a construction that keeps out the rain and the sun and, at the same time, allows the heat which ordinarily accumulates under other window and door shades to readily escape by ascending up through the awning. The construction of it is a double row of slats, securely fastened together, attachable to a wall, with about the same drop as any ordinary window awning. The top row has a space between slats of an inch or more, so the water will go through, but directly under each such space there is a slat of the same width and construction as those on the top. It is placed an inch or so below such spaces and so grooved that the water that goes through the spaces hits that under slat and the grooves carry the water down and off.

The invention by Matthews arose in this way: He was building a home in 1930 over in Georgia—I have forgotten the name of the town. He was familiar with all the different kinds of window awnings that existed at that time, and was not satisfied with them because they accumulated heat and were, from that standpoint, disagreeable. He was not an inventor, but just a business man. So he put himself to the task of making a window and door shade that would attain the objectives indicated above. He wound up with this awning. That was about two years after his house was completed. It was such a success that he made application for a patent on it, and the patent was granted. This was in 1937, the number being 2,069,893. To the Patent Office in Washington, about five prior patents were cited as an anticipation of the art. They are introduced in evidence. The Patent Office, after a consideration of them,

nevertheless, granted to Matthews his patent. After that patent had been in effect for about two years, there was an application made for a reissue to cover all features of the original patent and some improvements. The reissue patent was granted in 1939, being Reissue No. 21,053, which is the one involved in this suit. He sold a half interest to the plaintiff, Graham.

As stated, the defense presented by the defendant is that the device of Matthews was not patentable; that the art had long theretofore been known and was anticipated in other patents which had been in existence, some of them, for approximately ninety years. Where a defendant presents the defense of invalidity of a patent, which is alleged to be infringed, the burden is on such defendant not merely to show that, but to leave that issue no manner in doubt. It is rather unusual, and places such a defendant in a peculiar position. In other words, the effect of the decisions are that such defendant must show the invalidity of the patent beyond a doubt. This is the highest degree of proof known in our law. That arises because, when such an attack is made, there is a presumption of law in behalf of the validity of that patent. This presumption is based, and well based, on the fact that the Patent Office issued the patent. That presumption is strengthened by the very fact, cited by defendant, that there was a contest in the Patent Office over the issuance of this patent. That presumption has less force, where a patent goes through that office without a challenge and is granted, than it does if there was a fight over its issuance, but ultimately granted.

There is no doubt in my mind that the patents issued to Matthews were valid patents; they presented the required novelty to make them patentable. The fact that they combined some old elements that were long known does not affect their validity, or ever, where, as in this case, such old elements were combined in a way to produce a new and useful result. That is true with respect to the Matthews patent. They were in no sense the result of mere mechanical skill. That it is useful is pretty well demonstrated by the fact that plaintiffs are having to fight so much to keep others from appropriating it. This defendant, I will say, is a rather strong business concern here, and a reputable one. It is unmistakable, they place great value on the utility of plaintiff's device. A very similar contest over this patent was pending at Dallas recently. There appears to be a great demand arising for it, particularly at this time, when we are having the construction of houses in so many different new lines of attractive architecture. It can readily be seen why they are fighting over it.

Also, it is my view that the defendant Agee's blinds infringe the Matthews patent. In fact, they simply use the Matthews patent. Their excuse being that they invented and procured the allowance of a patent for a connection, or, you might say, a hinge for attaching the side awnings, which makes the blinds more readily collapsible, for cleaning, stacking, etc. Also, there is no doubt in my mind that Agee's device is a good one. His device, invented for attaching plaintiff's awnings, was really a novelty, and is most useful. It was something apparently that had never been thought of before, and was truly worthwhile. However true that may be, it gives Agee no right to use the Matthews top awning and side awning. In other words, the Matthews patent is the dominating patent and the Agee hinge patent is a subordinate patent. Agee could not use his hinge patent on the Matthews awning without the authority of Matthews to do so.

It is my view that if Agee uses the drainage features as covered in the Matthews patent in Claims 3, 4 and 5, which he does, that he infringes the Matthews patents. Also, it is my view that Agee infringes Claims 1 and 2 of the Matthews patent if he uses the double slat system and spacing arrangement such as I have described in the outset of this memorandum, which he does. This system of double slats with the drain one below, all of them spaced as they are, is the exclusive invention of Matthews, some of which are covered in the original patent, and all in the reissue patent.

I have made a careful study of the patents, cited in anticipation against the Matthews patent, but from my examination of them it appears they do not disclose any knowledge of the real art, as is exhibited by Matthews in his patent. Too, five of them were cited against it. They cover such window shades as the old time green slat shutter shades we have seen for windows always, and other shades, canvas of different kinds, which have been, more or less, in common knowledge and use a long time. The answer to all of them is that they did not keep out the rain and sun,

at the same time letting out all the heat, and permitting a fine sysem of ventilation as is embodied in the Matthews patents. Therefore they did not accomplish such a new and useful awning, say nothing of its greater beauty and attractiveness.

Judge Atwell, in Matthews v. Morten,[1] May 31, 1941, passed upon the same kind of an attack as defendant makes here on the Matthews patent. He held it valid. I have read his opinion and thoroughly agree with him.

For the reasons stated, judgment will be for the plaintiffs.

---

[1] No opinion for publication.