**MATTHEWS et al. v. ALLEN et al.**

**MATTHEWS et al. v. KOOLVENT METAL AWNING CO. OF WINSTON-SALEM, Incorporated.**

Nos. 6042, 6043.

United States Court of Appeals Fourth Circuit.

Argued April 17, 1950.

Decided June 8, 1950.

———◆———

Albert L. Ely, Akron, Ohio (John S. Cansler, Charlotte, N. C., B. S. Womble, Winston-Salem, N. C., Ely & Frye, Akron, Ohio, Cansler & Cansler, and Womble, Carlyle, Martin & Sandridge, Winston-Salem, N. C., on the brief), for appellants in No. 6042 and appellants and cross-appellees in No. 6043.

Harry H. Semmes and John Gibson Semmes, Washington, D. C. (Lee M. Robinson, Washington, D. C., Curtis M. Clark and Semmes, Keegin, Robinson & Semmes, Washington, D. C., on the brief), for appellee in No. 6042 and appellee and cross-appellant in No. 6043.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

These are patent cases based upon charges of infringement of claims 3, 4, 5, 9 and 10 of Matthews Reissue Patent No. 21,053 issued on April 18, 1939 for a permanent, ventilated awning structure. Both suits were filed in May, 1948, that involved in Appeal No. 6042 against a copartnership operating as Koolvent Metal Awning Company in the area around Charlotte, North Carolina, and that involved in Appeal No. 6043 against Koolvent Metal Awning Company of Winston-Salem, Inc., operating in the area around Winston-Salem, North Carolina. Defendants in both cases were operating as sublicensees under one Wynne of Atlanta, Georgia, who held a license under the Houseman Reissue Patent No. 20,975 for several southern states. The Matthews and Houseman patents were in interference in the Patent Office and priority as to claims 3, 4 and 5 was granted Matthews.

The plaintiffs in both suits are Albert T. Matthews, the inventor of the patent in suit and the owner of a one-half interest therein, Thornton G. Graham, the owner of the other half interest, and the National Ventilated Awning Company of Dallas, Texas, which was organized in 1945 for the purpose of granting and administering licenses under the Matthews patent to manufacturers throughout the United States except in the States of Texas, Oklahoma, Arkansas and Louisiana.

The instant cases were consolidated for trial and were originally tried in November, 1948. The patent in suit discloses an awning of wood or metal construction composed of two spaced layers or tiers of slats or strips, the strips of each layer being spaced apart and arranged in staggered relation with respect to the strips of the other layer so that each strip covers the space between two strips in the other layer. The slats or strips overlap so that, during the heat of the day, rays of sunlight are intercepted, but the spacing of the slats and tiers provide circuitous passages through which heated air entrapped beneath the awning escapes. The arrangement and spacing of the strips permit sunlight falling on the lower strips to be reflected against the underside of the upper strips and re-reflected into the room so that diffused light is transmitted through the awning. To collect and discharge the rainwater the upper surfaces of the slats are grooved. These grooves collect and discharge water along the lower, outer edge of the awning. The sides of the awning are closed in by triangular filler pieces which are also of the staggered slat arrangement providing added ventilation for the sides. Thus, in summary, in addition to a metal or wood construction designed for year round use and providing means for drainage, the Matthews patent calls for two distinct advantages over the old type closed canvas awning, namely a construction which insures the escape of heat pockets and the diffusion of light through openings between the layers of slats.

At the time these suits were instituted, the defendants were engaged in the manufacture and sale of the "Koolvent" type of

permanent awnings. In the standard "Koolvent" awning two tiers or layers of sheet aluminum slats or strips are used in lieu of the wooden slats initially employed by Matthews. The aluminum slats or strips are provided with flanges which are turned at right angles to the plane of the strips, and the flanges on the upper strips or covers are turned downward while the flanges on the lower strips or pans are turned upward. The use of flanges eliminates the necessity of grooves in the slats as rainwater is delivered to the lower, outer edge of the awnings through the troughs formed by the lower flanged strips or pans. The sides of the awning are provided with slatted triangular filler pieces similar to those described in the Matthews patent.

The validity of the Matthews patent has been in constant litigation for the past ten years and in each instance the patent has been upheld; and it has also been held that the patent is infringed by the standard type of Koolvent awnings. See, Miles v. Matthews, 5 Cir., 171 F.2d 38; Matthews v. Koolvent Metal Awning Co., 5 Cir., 158 F.2d 37; Koolvent Metal Awning Corp. of America v. Graham, D.C.N.D. Ohio, 82 F. Supp. 40; Matthews v. Agee Venetian Blind Co., D.C.N.D. Tex., 52 F.Supp. 50; Matthews v. Morten, D.C.N.D. Texas, 50 U.S.P.Q. 199 The effect of the invention upon the industry and its commercial success are clearly shown by the fact that at the time of the trial in the instant case there were seventy-five direct licensees in the United States who were engaged in the manufacture and sale of Matthews awnings, and that the sales by licensees under the control of the National Ventilated Awning Company had reached over ten and a half million dollars. The weight to be given to commercial success in considering the validity of an invention has been frequently considered by this court. Baker-Cammack Hosiery Mills v. Davis Co., 4 Cir., 181 F.2d 550; Reynolds v. Whitin Machine Works, 4 Cir., 167 F.2d 78, 85; Wine Ry. Appliance Co. v. Baltimore & Ohio R. Co., 4 Cir., 78 F.2d 312, 314.

The conclusions of the District Court that the Matthews patent is valid and is infringed by the standard Koolvent awning are not questioned upon this appeal. After receiving notice of infringement and after the institution of the suits in the District Court, the defendants began to manufacture and sell a structure which they refer to as a "jammed lug" awning. They contend that this awning does not infringe the patent and the discussion on this appeal is confined to this contention. A general appeal from the judgment of the District Court was taken by the defendant Koolvent Metal Awning Company of Winston-Salem, Inc. in case No. 6043, but it has not been pressed in this court. We find no occasion to depart from the decisions cited above in which the questions of validity and infringement were considered.

The question to be decided therefore is confined to the distinction, if any, between the "standard" and the "jammed lug" types of awnings manufactured by the defendants. At the original trial the District Judge held that both types infringed the patent but a new trial was granted on this point at the instance of the defendants and upon a further examination, he concluded that the upper and lower tiers or slats in the "jammed lug" awning were not so spaced apart as to afford the ventilation which the patented structure was designed to furnish. The standard type of Koolvent awning is exemplified by Exhibit 6 in the Charlotte case and by Exhibit 7 in the Winston-Salem case. In Exhibit 6 two staggered rows of slats or strips are secured to upper and lower cross rails by rows of bolts which pass through the cross rails and the pans; and the pans and covers are secured to each other by angular metal clips which are riveted to the upturned flanges of the pans and then bent over and bolted to the covers. Along the down-turned valance of the awning there is another row of bolts which pass through both the pans and the covers. The width of the spaces between the pans and covers which compose the body of the awning and the amount of ventilation afforded are determined by the location of the bolt holes in the valances and the height of the lugs or clips at the upper cross rail; that is to say, the ventilating spaces are controlled by the manner in which the pans and covers are con-

nected at the two ends of the awning, and these features may be easily constructed to produce such result as is desired.

The "jammed lug" awnings were exemplified by Exhibit 19 manufactured by the Charlotte defendants and by Exhibit 20 manufactured by the Winston-Salem defendants. These were awnings in actual use by customers of the defendants. They were produced by the plaintiffs and since no other awnings of the type were produced by the defendants, they may be accepted as typical. Our examination of the evidence taken in the District Court convinces us that they do not differ materially from awnings of the standard type exemplified by Exhibits 6 and 7 respectively, and therefore, like them, infringe the patent. The sole difference is alleged to lie in the fact that in the "jammed lug" type, the pans and covers are brought into tight contact with one another so as to exclude all ventilation and light diffusion except that which is attributable to imperfect workmanship or incidental to practical use. The spaces between the covers and pans of the awnings were measured and compared at the trial below and it was demonstrated that the average space is only approximately 1/32 of an inch less in Exhibit 19 than in Exhibit 6, at the midway point. The difference in the ventilating spaces in Exhibit 20 and Exhibit 6 is even less. Moreover, the exhibits were subjected to a smoke test through the employment of a bee smoker, a device employed by bee growers when the insects swarm, and the existence of ventilating spaces in the "jammed lug" type, although somewhat smaller than those in the standard type, was demonstrated. A similar test was offered by the appellants without objection during the arguments on the appeal with like results. Subsequent to the argument appellees protested that the test in this court should be disregarded since they were taken by surprise. We find no merit in this complaint. Physical exhibits (including Exhibits 6, 7, 19 and 20 and the bee smoker) had been sent to the court with the knowledge of the appellees. No objection was made to the manner in which the test was conducted, and the appellees had full opportunity to observe and comment upon the results. Even if the smoke tests in the trial below and in this court be disregarded, the physical similarity of the structures and the comparison of the measurement of the ventilating spaces demonstrates that there is no material distinction between the two structures.

We are urged to hold that the "jammed lug" awnings do not infringe because of certain testimony on behalf of the defendants which tends to show that the defendants have manufactured and installed awnings, other than Exhibits 19 and 20, in which the parts fit so closely that there is practically no ventilation. It may be, as the defendants contend, that they have produced some awnings of the "jammed lug" type that do not infringe the patent, but we have no occasion on this appeal to pass upon the extent of the defendants' infringement; that will be determined in further proceedings in the District Court.

An immaterial difference in the Winston-Salem structures exemplified by Exhibit 7 of the standard type and Exhibit 20 of the "jammed lug" type should be noted. In Exhibit 7 the strips are attached to the upper cross rail in the same manner as in Exhibit 6, but are secured to the lower cross rail by bolts which pass only through the pans and not through the covers. The same arrangement is found in Exhibit 20 in which the covers and pans are tightly clamped together at the upper cross rail, but from this point to the lower end of the awning, the width of the space between the covers and pans gradually increases so that there is little difference in the size of this space in the two exhibits, and in each, ventilation is afforded.

In this connection the contention is made that Exhibit 20 does not infringe because the air is not allowed "to escape freely throughout the whole of the area of the awnings," a phrase found in the specifications but not in the claims of the patent. Obviously this argument cannot prevail for even if the quoted language should be considered a limitation upon the claims, infringement would not be avoided since the structure would still enable the infringer

to embody the heart of the invention although it might be done somewhat imperfectly. The variations between the awnings of the defendants and the awnings of the patent, whether the standard or "jammed lug" type be considered, must be examined under the well established rule that one does not avoid infringement by following the teachings of a patent imperfectly or by constructing a device that does not function as well as the patented structure, so long as he appropriates the substance of the invention. Angelus Sanitary Can Mach. Co. v. Wilson, 9 Cir., 7 F.2d 314, 318; Jay v. Ireland Matthews Mfg. Co., D.C.E.D.Mich., 280 F. 166, 173; Whitely v. Fadner, C.C.N.D.Ill., 73 F. 486; Murray v. Detroit Wire Co., 6 Cir., 206 F. 465, 468.

It is significant that the defendants have not taken the simplest and least expensive course to construct an awning without ventilation and diffusion of light. If that were their purpose, there would be no need for a multiplicity of tiers or slats connected by bolts and lugs at various points joined together at the cost of considerable time and labor. Their excuse is the need to create a structure strong enough to resist the stress of wind and weather. But the excuse is not convincing; it seems to have been advanced for the first time on this appeal, and in any event is met by the actual production and practical use of the less expensive awning made in a single piece which is shown by the evidence.

The owners of the patent ask the court not only to hold that the defendants' "jammed-lug" awnings infringe the patent, but also to declare that a structure, exemplified by a model and designated Exhibit T in this case, lends itself so easily to conversion into a ventilated infringing awning that its manufacture should also be enjoined. The defendants produced the model and declared it to be a representation of their "jammed-lug" awnings. The structure is composed of two tiers of covers and pans, with a space (1 inch wide in the model) between the downturned flanges on the covers and the upturned flanges on the pans. There seems to be no reason for the existence of these spaces, if the purpose of the manufacturer is to make an airtight awning. The edges of the flanges in the model make fairly close contact with the opposing slats; but free ventilation would be obtained if spaces were opened up at these points and this could be done by shortening the down-turned flanges on the covers or raising the covers at other points. With such modifications, the spaces between the flanges would permit the free passage of air.

These circumstances lead the plaintiffs to contend that defendants, who have infringed in the past, intend to infringe in the future by putting out an awning which will either afford ventilation when manufactured or will be readily convertible by the users to a ventilating article; and that, unless they are enjoined, manufacturers generally will be able to appropriate the invention. The rule is invoked that not only completed acts but also threatened acts of infringement may be enjoined, if the opportunity and the intent to infringe are present. Graham Paper Co. v. International Paper Co., 8 Cir., 46 F.2d 881, 886; Tindel-Morris Co. v. Chester Forging & Eng. Co., C.C.E.D.Pa., 163 F. 304, affirmed 3 Cir., 165 F. 899; Corrugated Fiber Co. v. Paper Working Machines Co., D.C.E.D. N.Y., 259 F. 283, 288.

We do not find it necessary to pass on the point, since at this time it is academic in this litigation. The plaintiffs assert that Exhibit T does not correctly represent the "jammed-lug" awnings manufactured by the defendants and the defendants themselves contend that the existence or nonexistence in commercial manufacture of the type of awning represented by Exhibit T is immaterial to the decision of the questions involved in this appeal. It is not our function to render advisory opinions as to what may amount to infringement in the future. If there is violation of the injunction of the court, the plaintiffs will have their remedy in proceedings for contempt.

The judgments of the District Court are affirmed insofar as they sustain the validity of the patent and the infringement thereof by the awnings represented by Ex-

hibits 6 and 7; but are reversed insofar as they hold that the "jammed-lug" awnings of the defendants represented by Exhibits 19 and 20 do not infringe the patent in suit.

The case is remanded for further proceedings in accordance with this opinion.

Affirmed in part and reversed in part, and remanded.